898 So.2d 1244 (2005)
SABINE PARISH POLICE JURY
v.
COMMISSIONER OF ALCOHOL & TOBACCO CONTROL.
Sabine Manufacturing, Inc.
v.
Sabine Parish Police Jury & Sheriff Guffey Pattison.
No. 2004-C-1833.
Supreme Court of Louisiana.
April 12, 2005.
*1245 Hon. Don M. Burkett, District Attorney, Counsel for Applicant.
Kelly, Townsend & Thomas, Donald G. Kelly, Natchitoches, Celia R. Cangelosi, Baton Rouge, Counsel for Respondent.
TRAYLOR, Justice.
We are asked to determine the effect on a local option election previously held by a ward in Sabine Parish after the parish has restructured itself on an election district basis. In this case, a portion of the ward, which previously voted to prohibit the sale of alcoholic beverages, has become a part of an election district which has never voted to prevent the sale of alcoholic beverages. Finding that the provisions of La. R.S. 26:583 dictate that the portion of the ward included in the election district must take on the sales characteristics of the election district, we affirm the decision of the court of appeal.

FACTS
The pertinent facts of this matter are stipulated by the parties. Pursuant to a local option election held in Ward 3 of Sabine Parish and subsequent ordinance by the Sabine Parish Police Jury ("Police Jury") on March 16, 1977, Ward 3 was voted "dry"[1] by local option election.[2] Subsequently thereto, Sabine Parish restructured itself from a system in which its governing authority was elected by wards into a system where the police jurors are elected by election districts. Election District 6 in Sabine Parish is comprised of a portion of Ward 3 and a portion of Ward 5. Ward 5 previously held a local option election and voted itself "wet." There has never been a local option election in Election District 6.
*1246 In 2003, Sabine Manufacturing, Inc. ("Sabine Manufacturing") sought to obtain state and local permits from the Commissioner of Alcohol and Tobacco Control, Department of Revenue, State of Louisiana ("Commissioner") and the Police Jury on behalf of two of its businesses, Toledo Town and Tackle and Mr. C's Café, in order "to sell, offer for sale, handle or distribute at retail, beverages of low and high alcoholic content, subject to state and local law."[3] The parties stipulate that both of Sabine Manufacturing's businesses are located in the part of Ward 3 which became Election District 6.
On January 15, 2003, the Police Jury passed Resolution # 5151 "to oppose any Alcoholic Beverage Licenses being issued in Ward 3 of Sabine Parish Louisiana."[4] The state issued a Class B permit to Toledo Town and Tackle on May 7, 2003, and a Class AR permit to Mr. C's Café on October 1, 2003. The Police Jury, acting through the sheriff, refused to issue local permits to either business. Moreover, on May 15, 2003, the Police Jury held a special meeting and passed Resolution # 5205, which directed the sheriff not to issue a local alcoholic beverage license on behalf of the Police Jury in any ward where a local option election had been held and the ward was voted "dry."
The Police Jury filed a petition in district court against the Commissioner, arguing that La. R.S. 26:81(B)(1)[5] and La. R.S. 26:273(A)(1)[6] prohibit the state from issuing a permit to sell alcohol in any subdivision of the state where the business has been prohibited by referendum vote pursuant to Title 26. Sabine Manufacturing filed two suits in district court against the Police Jury and the sheriff for denying the issuance of a local permit for each of its businesses, arguing that under the provisions of La. R.S. 26:583, the entirety of Election District 6 is "wet," and thus, the Police Jury and/or sheriff should have issued the local permits. The three cases were consolidated for trial, which was held on December 17, 2003.[7]
*1247 The testimony of one witness was adduced at trial, that of Ronald Busby, the secretary/treasurer of the Sabine Parish Police Jury since 1985. Mr. Busby testified that there are ten wards in Sabine Parish and nine election districts. There are also ten road districts with the same geographical boundaries as the ward lines. The wards are still used to collect road taxes and to hold stock law elections. In addition to road districts, there are three fire protection districts in Sabine Parish. One fire protection district encompasses Wards 1 and 2, another fire protection district encompasses Wards 3 and 4 and the other fire district encompasses Wards 5-10. Mr. Busby testified that the wards have never been abolished by an act of the Police Jury but admitted that the police jurors have been elected from the election districts, and not the wards, since the mid-1980's. He stated that none of the election districts comprising Sabine Parish had held local option elections. No other witness testified at trial. In addition to the stipulations and Mr. Busby's testimony, the parties presented several joint exhibits.
At the conclusion of the trial, the trial judge rendered a judgment in favor of the Commissioner and Sabine Manufacturing, relying upon the Second Circuit's reasoning and decision in King v. Caddo Parish Commission, 31,098 (La.App. 2 Cir.1998), 727 So.2d 545, to find that the entirety of Election District 6, including the portion of Ward 3, must permit the sale of alcoholic beverages. The trial judge ordered the Police Jury and the sheriff to issue the local liquor licenses to Sabine Manufacturing. The Police Jury and the sheriff appealed this ruling.
In a 2-1 decision, the appellate court affirmed the trial judge's ruling, relying on the reasoning in King.[8] This court granted a writ to determine the correctness of that decision.[9]

LAW AND ANALYSIS
At issue is the proper interpretation to be given La. R.S. 26:583, its relationship to other local option laws, and its application to the facts of these consolidated cases. Questions of law, such as the proper interpretation of a statute, are reviewed by this court under the de novo standard of review. Cleco Evangeline v. Louisiana Tax Com'n, 2001-2162 (La.4/3/02), 813 So.2d 351, 353. After our review, we "render judgment on the record, without deference to the legal conclusions of the tribunals below. This court is the ultimate arbiter of the meaning of the laws of this state." Id.
La. R.S. 26:582(A)(1) authorizes the governing authority of a ward, election district or incorporated municipality to hold a local option or referendum election once every two years upon the petition of at least 25 percent of the qualified voters "to determine whether or not the business of selling alcoholic beverages shall be conducted and licensed therein."[10] La. R.S. *1248 26:583 explains the effect on previous local option elections when political subdivisions have been merged, and provides:

§ 583. Effect of merger
A. When a portion of a ward, election district, or municipality is annexed or made a part of another ward, election district, municipality, or city-parish government, the portion annexed or made a part of shall take on the legal sales characteristics, as provided in this Chapter, of the ward, election district, municipality, or city-parish government to which it is annexed or made a part of.
B. The provisions of this Section shall be applicable to any election previously called under this Title or any other local option law and to any territory covered by such election which has subsequently been merged with another ward, election district, incorporated municipality, or portion thereof or whose boundary has been changed, it being the intention of this Chapter that the sale of beverages covered by this Title be permitted or prohibited only in an entire ward, election district, or incorporated municipality and not in any portion thereof.
C. Notwithstanding the provisions of Subsections A and B of this Section, any package house in existence and operating as such on August 15, 1995, in an area that is subsequently annexed into a ward, election district, municipality, or city-parish government that prohibits the sale of alcoholic beverages shall be allowed to continue operation and shall not be subject to the provisions of Subsections A and B of this Section.
The crux of the argument of the Police Jury and the sheriff is their contention that Ward 3 of Sabine Parish has not been abolished and continues to serve several political functions. Thus, in their argument, Ward 3 has not been "merged" with Election District 6 such that La. R.S. 26:583 should apply. They claim the court of appeal's decision in this case misinterprets La. R.S. 26:583, fails to accord the vote of the people its due weight, fails to accord the police jury's interpretation of its own ordinance any weight whatsoever and is contrary to the clear language of other sections of the local option law, specifically La. R.S. 26:81(B)(1) and 26:273(A)(1).
Moreover, they believe, as did the court of appeal's dissent and the dissent in King, that the word "another" in La. R.S. 26:583, when used to describe the merger of one political body into another, cannot be applied to dissimilar entities. In other words, they believe that a ward cannot be merged into "another" election district. They believe the situation described by the legislature in this statute must relate to similarly situated political entities, i.e. when a ward is merged into "another" ward, an election district is merged into "another" election district, a municipality is merged into "another" municipality, or a city-parish government is merged into "another" city-parish government.
Relying on Blanchard v. Gauthier, 248 La. 1107, 184 So.2d 531 (1966) from this court and the appellate cases of Doughty v. Tullos, 425 So.2d 814 (La.App. 3 Cir.1982), and Hughes v. Parish Council of Parish of East Baton Rouge, 48 So.2d 823 (La.App. 1 Cir.1950), the Police Jury and sheriff argue that changes in boundaries, such as the re-arrangement of a parish from a ward system into an election district system for electing police jurors, does not change a prior prohibitory law voted upon by the people. To do so in this case, argue the appellants, is to defeat the will of the voters of Ward 3. They claim that arbitrarily-drawn election districts, which are determined for racial fairness and which *1249 are subject to change with each new census, do not reflect the type of communities which the legislature has decided should determine whether a locality will allow or prohibit the sale of alcoholic beverages.
Finally, the Police Jury and the sheriff contend that by keeping the portion of Ward 3 which became a part of Election District 6 a "dry" ward complies with the provisions of Subsection B of the statute, in that the entirety of Ward 3 would remain dry.
Sabine Manufacturing and the Commissioner interpret the statute at issue quite differently. They contend that Election District 6 was created by the merger of a portion of Ward 3 and Ward 5, with Election District 6 becoming the political unit from which the parish governing body is elected. They argue that whether Ward 3 continues to have some political function is not the issue, rather, the court should look to the fact that the governing authority of the parish is elected from the election district and not the ward. Since Election District 6 has never held a local option election, and therefore does not prohibit the sale of alcoholic beverages, the portion of Ward 3 which is now a part of the political entity from which the parochial officers are elected must take on the legal sales characteristics of the election district. Thus, they urge, Subsection A of La. R.S. 26:583 should be applied as written.
Sabine Manufacturing and the Commissioner contend that the cases upon which the Police Jury and sheriff rely were decided prior to 1997 amendments to the statute and to other local option laws which must be construed together. After the 1997 amendments, local option elections were authorized on an election district-wide basis. In addition, the prohibition in Subsection B was amended to include election districts. Thus, they argue, the legislature clearly meant that the prohibition or allowance of the sale of alcoholic beverages must be maintained for the entire election district where that political subdivision is the governing authority of the parish.
Sabine Manufacturing additionally argues that, linguistically, the term "another" in Subsection A has the equally accepted meaning of "some other." Thus, Ward 3 or a portion thereof can become a part of some other ward, some other election district, some other municipality or some other city-parish government. Sabine Manufacturing also contends that Ward 3 is no longer a "ward" as defined by the election code because the police jurors are no longer elected from wards but from election districts.
The Commissioner believes Subsection B clearly provides that the Section applies in spite of previous local option elections prior to merger and evinces the Legislature's intention to have either the sale or prohibition of alcoholic beverages be consistent within entire wards, election districts and incorporated municipalities. The Commissioner argues that certain parishes have not restructured themselves into election districts for the election of parochial officers. Since there are some parishes in which police jurors are still elected by wards, the Commissioner maintains that the Legislature of necessity had to retain the political unit of a "ward" in the local option laws.
Finally, the Commissioner argues that there is no violation of other local option laws in the decisions of the lower courts. These statutes must be read together and La. R.S. 26:583 provides the effect to be given to a referendum vote when there is a change in the boundaries for the election of parochial officers. Sabine Manufacturing and the Commissioner contend that the lower courts correctly applied the statute.
We turn to well-defined legal principles in our interpretation of the statute *1250 at issue. Legislation is the solemn expression of legislative will, and therefore, the interpretation of a law involves primarily the search for the legislature's intent and the reasons that prompted the legislature to enact the law. La. Civil Code art. 2; see Detillier v. Kenner Regional Medical Center, XXXX-XXXX p. 3 (La.7/6/04), 877 So.2d 100, 103; Grant v. Grace, 2003-2021 p. 5 (La.4/14/04), 870 So.2d 1011, 1014 quoting Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184; Sultana Corp. v. Jewelers Mut. Ins. Co., XXXX-XXXX p. 3 (La.12/3/03), 860 So.2d 1112, 1115; SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX p. 11 (La.6/29/01), 808 So.2d 294, 302 ("SWAT 24"). The interpretation of a statute starts with the language of the statute itself. Grant, 2003-2021 p. 4, 870 So.2d at 1014.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La.Code Civ. art. 9; Detillier, XXXX-XXXX p. 4, 877 So.2d at 103. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole. La.Code Civ. arts 10 and 12; Detillier, XXXX-XXXX p. 4, 877 So.2d at 103. Laws on the same subject matter must be interpreted in reference to each other. La.Code Civ. art. 13; Detillier, XXXX-XXXX p. 4, 877 So.2d at 103. Moreover, "in many cases, the legislative history of an act and contemporaneous circumstances may be helpful guides in ascertaining legislative intent." Exxon Pipeline v. La. Public Service Com'n, 98-1737, 98-1738 p. 8 (La.3/2/99), 728 So.2d 855, 860.
We start our analysis by noting that "the power to regulate traffic in alcoholic beverages is vested in the State and the legislature may delegate such power to political subdivisions of the State." State v. Sissons, 292 So.2d 523, 525 (La.1974); see State v. Emerson, 197 La. 783, 2 So.2d 212 (1941); State v. Gardner, 198 La. 861, 5 So.2d 132 (1941). By this delegation, the State does not surrender its power; indeed, the legislature may alter or recall the delegated power at any time. Sissons, 292 So.2d at 526. A review of the amendments to the local option laws shows that the legislature has used its power to do that several times.
A brief history of our liquor laws since the repeal of Prohibition is pertinent to our analysis. Following the repeal of the 18th Amendment to the U.S. Constitution by the 21st Amendment, the Louisiana legislature passed legislation permitting the business of selling and producing alcoholic beverages. See 1933 Acts No. 1, Extraordinary Session.[11] The state delegated to parishes and municipalities the authority to hold local option elections to allow the voters to decide whether to prohibit or permit such businesses within those political subdivisions. See 1933 Acts No. 2, Extraordinary Session. Pursuant to its power, the legislature changed this delegation of authority to different political subdivisions through the years. See ex. 1934 Acts No. 15 (parishes and municipalities were authorized to hold local option elections); 1935 Acts No. 17, First Extraordinary Session (parishes, wards and municipalities authorized to hold local option elections); 1948 Acts No. 372 (wards, incorporated villages, towns and cities authorized *1251 to hold local option elections); 1950 Acts No. 2, Extraordinary Session (ward, incorporated municipality authorized to hold local option elections; exercise of local option by parishes expressly prohibited); 1974 Acts, No. 41 (parishes, wards and incorporated municipalities authorized to hold local option elections); 1986 Acts, No. 958 and 1987 Acts, No. 696 (wards and incorporated municipalities authorized to hold local option elections); 1997 Acts Nos. 330, 765 (wards, election districts, incorporated municipalities authorized to hold local option elections).
Earlier cases interpreting the local option laws raised the issue of which entity could hold a local option election and whether the results of local option elections from certain political subdivisions continued to have validity when the legislature later recalled the power previously delegated to those political subdivisions. See Sissons, supra (parish-wide prohibition must fall after legislature prohibits parish authority); State v. Wright, 305 So.2d 406 (La.1974) (same); Tolar v. State, 315 So.2d 22 (La.1975) (same; legislation cannot revive); Patrick's Cafe, Inc. v. Red River Parish Police Jury, 315 So.2d 27 (La.1975) (same; parish ordinance cannot revive); Nomey v. State, through Edwards, 315 So.2d 709 (La.1975) (special law allowing 12 parishes to hold parish-wide local option when all others are by ward or municipality declared unconstitutional); Harper v. State, Dept. of Revenue, 328 So.2d 669 (La.1976) (permit cannot be denied based on parish prohibition ordinance subsequently invalidated by change in the law). This inquiry was necessary because, in general, "a police regulation of a subdivision of the State enacted pursuant to authority delegated by the State cannot exceed the grant of authority and must fall when it conflicts with State law." Sissons, 292 So.2d at 526. These cases did not deal with the situation presented here, whether political units were merged into each other, but rather were concerned with the power of the political subdivisions to hold local option elections.
In Hughes v. Parish Council of Parish of East Baton Rouge, 48 So.2d 823 (La.App. 1 Cir.1950), the First Circuit was presented with the factual situation in which a ward, which had been voted "dry" in a previous local option election, had been merged with other "wet" wards when the parish set up a new form of government. In determining what was the effect of the merger on the previous local option election, the appellate court noted that the question was res nova in the state and looked to other jurisdictions to see how the issue had been resolved. The First Circuit found that the majority of other jurisdictions held that "when two or more subdivisions are merged into one and one of the areas merged has previously established itself as a dry section, that it remains dry until a subsequent vote of the people changes the action of the previous vote." Hughes, 48 So.2d at 828. Under this reasoning, the appellate court found "each of the merged areas retains its position as either wet or dry until a new election is called." Id. The First Circuit found that the redistricting of the ward lines had been accomplished without any mention as to the local option question and concluded that, "in a case of this kind, we do not think that a prohibitory law such as that in question here, voted upon and adopted by a ward can be repealed or defeated in its operation by any subsequent act of the governing authorities of the Parish of East Baton Rouge, by a simple change of boundaries in an election district or ward." Hughes, 48 So.2d at 832. No writ was taken from this decision; consequently, Hughes was not presented to this court for review.[12]
*1252 The question was presented for the first time in this court in Blanchard v. Gauthier, 248 La. 1107, 184 So.2d 531 (La.1966). In Blanchard, an area formerly constituted as a "dry" ward by a local option election was reorganized and incorporated as part of another larger ward. Relying on Hughes and the general rule then prevailing in other jurisdictions, this court could perceive no valid reason for departure from the general rule that, "ordinarily the legal effect produced by a change in the boundaries or a reorganization of territory, in which a part has been previously voted `dry' under local option statutes, does not effect a repeal of a local option law in that part of the territory which was `dry' prior to the consolidation or reorganization." Blanchard, 248 La. at 1114, 184 So.2d at 533. Thus, this court held that the area of the former "dry" ward would remain "dry" until a subsequent vote of the electors of the new ward which encompassed the area of the former "dry" ward.
This court noted that, although it was impossible for the electors of the former ward to hold another election, the electors of the new ward, which now included the former "dry" territory, had the right under the local option law to have the issue of prohibition voted on by all of the electors in the new ward. Thus, it was not correct to say that the status existing in the former ward could not be changed by a vote of the people. A new vote could be taken, however, the electors entitled to vote on the new local option would include all of the electors residing in the new ward. Blanchard, 184 So.2d at 534.
Had no further legislative action been taken, Blanchard would be controlling in the situation presently before us and Ward 3 would retain its "dry" status in spite of the inclusion of a portion of its boundaries within a "wet" Election District 6 until such time as another local option election was held. However, after Blanchard was decided, the legislature enacted La. R.S. 26:582.1,[13] the source of the present La. R.S. 26:583. Through this new statute, the legislature for the first time provided rules governing the effect of the merger of political units on previous local option laws. Rather than allowing the merged political *1253 subdivisions to retain their status previously decided upon through local option elections, the merged entity must take on the sales characteristics of the political unit with which it is merged in areas having a population of one hundred thousand or more, excepting the Parish of Ouachita. The intent of the legislature to legislatively overrule Blanchard, at least in those areas where the population is one hundred thousand or more, is clear in the provisions of Subsection B, which made the section applicable "... to any election previously called ...".
Due to the population limitation, the rules of former La. R.S. 26, 582.1 were held inapplicable to political units having a population of less than one hundred thousand. In Davis v. Caldwell Parish Police Jury, 331 So.2d 872 (La.App. 2 Cir.1976), writ refused, 334 So.2d 434 (La.1976), a ward formerly voted "dry" was merged into another ward which legally permitted the sale of alcoholic beverages. The Second Circuit noted the legislative enactment of former La. R.S. 26:582.1, but found it inapplicable to the merged wards at issue. Because it was undisputed that the new ward contained a population of less than one hundred thousand, the appellate court found the Blanchard decision controlling and the territory of the former "dry" ward which was merged into the other ward retained its "dry" status post-merger. Davis, 331 So.2d at 874. Similarly, in Froeba v. State, Dept. of Public Safety, Office of Alcoholic Beverage Control, 369 So.2d 727 (La.App. 3 Cir.1979), writ denied, 371 So.2d 615 (La.1979), a portion of a formerly "wet" ward was annexed to a "dry" municipality. Finding that the population of the city was less than one hundred thousand, the Third Circuit found former La. R.S. 26:582.1 inapplicable, relied instead on the holding in Blanchard, and concluded that the annexed portion retained its "wet" status. Froeba, 369 So.2d at 733. In Doughty v. Town of Tullos, 425 So.2d 814 (La.App. 3 Cir.1982), a "dry" area was annexed to a municipality which had previously voted itself "wet" for the sale of alcoholic beverages. Doughty relied on Hughes, Blanchard, Davis and Froeba to hold that the "dry" area remained "dry" until it was changed by a new local option election. Doughty noted that former La. R.S. 26:582.1 was a special rule for wards, municipalities or city-parish governments with a population over one hundred thousand which changed what it recognized as the general rule. Doughty, 425 So.2d at 816-817.
After these cases were decided, the legislature removed the population restrictions from former La. R.S. 26:582.1. See 1982 Acts, No. 472. Thus, the effects of merger described in that Section were made applicable to all portions of the state. However, since so many parishes were being reapportioned into election districts at that time, other deficiencies in the statute began to emerge.
In Stephens v. Madison Parish Police Jury, 463 So.2d 609 (La.App. 2 Cir.1984), a business owner sought to invalidate a local option election called for a former ward after the parish had been reapportioned into new wards and then into voting districts. The parish argued that the use of the old wards was permissible for a local option election. The Second Circuit, however, found that the old ward was abolished and no longer served the purpose of electing parochial officers. The appellate court noted "[t]here appears to be some confusion as to the area for which a local option election may be called as the statute does not appear to recognize the creation of voting districts by reapportionment." Stephens, 463 So.2d at 611. At that time, La. R.S. 26:582 authorized local option elections at the parish, ward or municipal level. See 1974 Acts, No. 41.
*1254 Although the Stephens court initially sought to supplement the statute's omission by finding a voting district equivalent to a ward for local option purposes, based on its reasoning that parochial officers were elected by the voting districts, the appellate court on rehearing found it unnecessary to reach that issue. Stephens, 463 So.2d at 612. Instead, the court noted that the old ward used for the local option election had been abolished. The court found the ward no longer served any political purpose whatsoever when the parish was reorganized on new ward lines, even before the parish's reapportionment into voting districts. The new ward lines continued to have some political functions after reapportionment as the tax records were still maintained by wards. Thus, the appellate court held that the election was invalid for the reason that the area for which the election was called was not a ward as required by La. R.S. 26:582, in other words, a ward with a functioning political purpose. Id.[14]
Pursuant to the 1987 reenactment of Title 26, former La. R.S. 26:582.1 was redesignated as La. R.S. 26:583 and certain cosmetic changes were made to the statute, none of which are at issue here. In 1995, the legislature amended La. R.S. 26:583(A) to include election districts in the list of political units regarding merger. See 1995 Acts, No. 780.[15] Further legislative change was made in 1997. Pursuant to 1997 Acts, No. 330, the legislature amended La. R.S. 26:582 to authorize election districts to hold local option elections, in addition to wards and incorporated municipalities. In addition, the act amended La. R.S. 26:583 to add election districts to Subsection A to correct an omission in the 1995 legislation, and to Subsection B, to provide that an election district must either permit or prohibit the sale of alcoholic beverages in its entirety.
This was the state of the law when the Second Circuit was presented with the case of King v. Caddo Parish Commission, 31,098 (La.App. 2 Cir. 12/22/98), 727 So.2d 545. In King, as in the case presently before us, the parish elected its governing body, police jurors, from wards prior to the mid-1980's. In 1984, Caddo Parish restructured itself into larger election districts, some of which included all or part of several of the old wards, for the purpose of electing members of the parish governing body called the Caddo Parish Commission. A former ward voted itself "dry" in a local option election held before the restructuring of the parish. The issue presented was whether the old "dry" ward remained "dry" after it was combined with the other "wet" wards to create the election district.
After examining the legislative history of the local option law, King found that the 1997 legislation which included election districts as a political subdivision authorized to hold local option elections was done so
"in response to the fact that many parishes had restructured themselves by population. Some parishes, after restructuring, continued to elect either police jurors or parish commissioners in new structured wards. Others elected police jurors or parish commissioners in *1255 voting districts or election districts." King, 31,0989 p. 5, 727 So.2d at 548.
King noted that some of the parishes restructured themselves without formally abolishing the wards. King also took note of another provision of Act 330, an amendment to La. R.S. 26:581, which defined an "election district" within the local option laws as "a district from which a parochial officer is elected but ... does not include a district located entirely within an incorporated municipality." King, 31,098 p. 6, 727 So.2d at 548 (emphasis in original).
King found that the inclusion of this definition of election district within the local option laws
retains the law's policy that, in recent decades, has allowed a political subdivision such as a ward and now, an election district, "from which a parochial officer [police juror] is elected" to vote wet or dry in a local option, "but does not include a district located entirely within an incorporated municipality" [in which case the wet or dry status of the municipality would control the election district, whether it be called by that name or called a ward], within the municipality. Id., 31,098 p. 6, 727 So.2d at 548 (emphasis in original).
King concluded that when a parish has been restructured and an election district is the political unit from which a parochial officer is elected, then the controlling term in the local option law is election district, while in the case of a parish that continues to elect its governing bodies from wards, the controlling term in the local option law would be ward. King, 31,098 p. 7, 727 So.2d at 549. By a 3-2 majority, King held that the local option election held in the ward before the parish was restructured into election districts were negated by the restructuring and the 1997 re-enactment and amendments to the local option law. King, 31,098 p. 8, 727 So.2d at 549.[16]
In the instant case, the appellate court relied upon the reasoning of King to find that the portion of Ward 3 currently comprising Election District 6 should permit the sale of alcoholic beverages. The Third Circuit extended King insofar as making explicit that there is no requirement that the ward, the former governing authority of the parish, should cease to exist for all purposes. The court below focused on the fact that the governing body of the parish is elected from election districts and no longer from wards. Thus, Election District 6 is the "parish governing authority" as stated in La. R.S. 26:582 for local option purposes. The Third Circuit held:
Despite Ward 3's continued existence for other purposes, it does not exist for the purpose of electing the parish's governing body. King and Stephens teach that it is not the abolishment of a particular ward for all purposes that is of importance in determining the wet or dry status of a previously "dry" political subdivision that is made part of a "wet" political subdivision. The central issue is whether the governing body of the parish is elected from the old political subdivision, that is "dry," or the new political subdivision, that is "wet." Since there has been no local option election in Election District 6 resulting in a prohibition of the sale of alcohol and police jurors in Sabine Parish are elected from Election Districts, Ward 3 takes on the characteristics of Election District 6 and is, therefore, "wet." Sabine Parish Police Jury, 2004-349 p. 5, 879 So.2d at 352-353.
We find the reasoning of the court of appeal to be correct. La. R.S. 26:583 must be read in conjunction with other local option laws, specifically La. R.S. *1256 26:581 and La. R.S. 26:582, all of which were amended by 1997 legislation. The changes in the language of these statutes are significant because "[w]here a new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law." SWAT 24, XXXX-XXXX p. 17, 808 So.2d at 305 quoting Brown v. Texas-La Cartage, Inc., 98-1063 p. 7 (La.12/1/98), 721 So.2d 885, 889 (citing New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans, 94-2223 p. 12 (La.4/10/95), 653 So.2d 538, 544.)
As a result of the 1997 legislation, La. R.S. 26:581(2) now defines an "election district" as the district from which a parochial officer is elected.[17] La. R.S. 26:582 now authorizes the governing authority of the designated political subdivisions to hold local option elections. We do not believe that the legislature intended for both wards and election districts to be operative for local option purposes when a parish contains both. In an area where the governing authority of a parish is no longer elected from wards but by election district, then the operative entity for local option purposes is the election district, even where the wards have not been formally abolished and may still exist for some purposes such as taxing. We believe that the term "ward" was retained in the statute for those parishes which may still elect their parochial officers by ward. Consequently, while we do not find La. R.S. 26:583 to be completely ambiguous, we do not find it to be a model of clarity. Had the legislature intended for both wards and election districts within the same parish to remain operative for local option purposes, it would have stated so explicitly.
This interpretation of La. R.S. 26:583(A) allows us to give effect to La. R.S. 26:583(B), as all parts of a statute must be given effect. Hollingsworth v. City of Minden, 2001-2658 p. 5 (La.6/21/02), 828 So.2d 514, 517 ("... courts are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided."). If both wards and election districts remained operative for local option purposes in parishes containing both, then the requirements of Subsection B, that the ward or election district permit or prohibit the sale of alcoholic beverages in its entirety, could only be satisfied where the ward and election district had the same geographical boundaries. We do not believe the legislature intended this result. This conclusion is bolstered by the fact that the legislature has provided legislation regarding the separate conduct of elections for municipalities located within wards or election districts[18] and, if it chose to do so, could have provided similar rules for separate elections in parishes which contained both wards and election districts.
This interpretation of La. R.S. 26:583 does not conflict with other provisions of local option laws, specifically La. R.S. 26:81(B)(1) or La. R.S. 26:273(A)(1). The legislature unmistakably and explicitly stated its intention, i.e."... it being the intention of this Chapter ...," that the effect of merger described in La. R.S. 26:583 "shall be applicable to any election previously called...." Therefore, any denial *1257 of a permit based on a previous local option election must fall before the effects of merger provided in La. R.S. 26:583.
We find that the cases relied upon by the Police Jury and sheriff were all decided prior to the legislative amendments which are now operative. We hold that these legislative amendments were made pursuant to the state's power to regulate traffic in alcoholic beverages, which is not divested by delegation. Insofar as these cases conflict with the subsequent legislation discussed, we find they were legislatively overruled.
Our interpretation of the statute does not ignore the will of the people. The electors of Election District 6 may petition to hold a local option election pursuant to La. R.S. 26:582. Nor does this interpretation impermissibly ignore the Police Jury's interpretation of its own ordinances. A parish ordinance must fall when it conflicts with state law. Sissons, 292 So.2d at 525.
Therefore, giving effect to the rule provided in Subsection A and giving effect to the legislature's intent expressed in Subsection B, we find pursuant to La. R.S. 26:583 that the portion of Ward 3 which is contained within Election District 6 takes on the sales characteristic of Election District 6. Since there has never been a local option election in Election District 6 prohibiting the sale of alcoholic beverages, we find that the entirety of Election District 6, including the portion of Ward 3 which was voted "dry" in a previous local option election, is deemed "wet" and must permit the sale of alcoholic beverages. The local option status of the entirety of Election District 6 may be changed only by a referendum election in Election District 6 called and conducted pursuant to the provisions of the local option laws, La. R.S. 26:581 et seq.

CONCLUSION
Based on the foregoing, we find that the provisions of La. R.S. 26:583 dictate that a ward, or a portion thereof, must take on the local option sales characteristics of the election district which it comprises after parish restructuring. The judgment of the court of appeal, which affirmed the decision of the trial court in favor of the Commissioner and Sabine Manufacturing, is affirmed.
AFFIRMED
KNOLL, J., dissents and assigns reasons.
WEIMER, J., dissents and assigns reasons.
VICTORY, J., dissents for the reasons assigned by Justice WEIMER.
KNOLL, Justice, dissenting.
With all due respect, I disagree with the majority's opinion finding the court of appeal correctly interpreted the provisions of La. R.S. 26:583.
Initially, I find it significant that Ward Three is still very much in existence as a political entity. There is no evidence that it was abolished. Rather, as the majority opinion acknowledged, testimony revealed Ward Three is still the basis for establishing and assessing taxes for road districts and fire protection districts as well as establishing boundaries for stock laws. Sabine Parish Police Jury v. Commissioner of Alcohol & Tobacco Control, 04-1833, p. 3-4 (La.), ___ So.2d ___, 2005 WL 832397 (citing Testimony of Ronald Busby, Secretary/Treasurer of the Sabine Parish Police Jury).
In this light, I find the majority erred by not sufficiently analyzing La. R.S. *1258 26:583. La. R.S. 26:583 provides in Section A:
A. When a portion of a ward, election district, or municipality is annexed or made a part of another ward, election district, municipality, or city-parish government, the portion annexed or made a part of shall take on the legal sales characteristics, as provided in this Chapter, of the ward, election district, municipality, or city-parish government to which it is annexed or made a part of. (Emphasis added)
As noted in Judge Scofield's dissent, the key word in Section A is "another," which in this context means "an additional person or thing of the same type as already mentioned"[1] or "one ... of the same kind."[2] Given this meaning, it is evident the statute only applies when "a portion of a ward... is annexed and made part of another ward." Therefore, "[c]onsistent with this usage of the word, a portion of a ward could not be made a portion of `another' election district. A ward and an election district are dissimilar entities. When referring to a ward, the only entity that would be one of the same type as already mentioned or of the same kind would be another ward." Sabine, 04-78, p. 1 (Scofield, Judge Pro Tempore, dissenting); 879 So.2d at 349. In my view, to read the statute otherwise misconstrues the Legislature's intent and unnecessarily thwarts the will of the people on an issue resolved by an election.
This Court is mandated to give words of law their generally prevailing meaning, and we are bound by the language of the law. Allen v. State ex rel. Ernest N. Morial New Orleans Exhibition Hall Authority, 02-1072, p. 12 (La.4/9/03), 842 So.2d 373, 381. Given the specific language of La. R.S. 26:583, I believe the Legislature did not intent that the direct vote of the people of Ward Three "could be so easily cast aside as the decision of the majority now mandates" simply through the establishment of arbitrarily-drawn election districts, which are determined for racial fairness and which are subject to change with each census, especially when the ward at issue has not been abolished and still exists as a political entity. Simply put, the re-arrangement of a parish from a ward system into an election district system for the purpose of electing police jurors, should not abolish a prior prohibitory law established by the vote of the people.
As aptly stated in Judge Scofield's dissent,
The election districts in question were created by a simple ordinance of the Sabine Parish Police Jury. The fact that the Police Jury may have been motivated by federal legislation to pass the ordinance, does not alter a whit that the election districts are creatures solely of the Police Jury. The one purpose of the Police Jury was to create districts from which members of the legislative arm of the Parish, the Police Jury, would be elected. In passing the ordinance, the Police Jury had no intention of altering judicial districts, school board districts, fire districts, road districts, certain taxing districts, et cetera. The Police Jury certainly had no intention of abolishing the wards in that parish, nor did the Police Jury intend to abolish or alter in any way the dry status of Ward Three. To the contrary, the Police Jury's keen intent to preserve the dry status of Ward Three could not be more clearly demonstrated than by the Police Jury's vigorous defense of the vote of the people *1259 of Ward Three in these very law suits.
Sabine, 04-78, p. 5; 879 So.2d at 355-56.
Accordingly, I dissent and would reverse the court of appeal.
WEIMER, J., dissenting.
I respectfully dissent.
At issue is an evaluation of LSA-R.S. 26:583. We begin as we must with the words of the statute. Grant v. Grace, 03-2021, p. 5 (La.4/14/04), 870 So.2d 1011, 1014. An evaluation of the words of this statute leads me to dissent for the reasons cited by Judge Pro Tempore John B. Scofield. See Sabine Parish Police Jury v. Commissioner of Alcohol & Tobacco Control, 04-0079 (La.App. 3 Cir. 6/23/04), 879 So.2d 349. Judge Scofield found the instant case was factually distinguishable from King v. Caddo Parish Commission, 31,098 (La.App. 2 Cir. 12/22/98), 727 So.2d 545, which was heavily relied on by the majority of the appellate court panel. The distinction is that the wards in Sabine Parish, unlike the wards in Caddo Parish, remained legally viable after the Police Jury designated election districts. Judge Scofield's analysis of Section A of LSA-R.S. 26:583 led him to the conclusion that, consistent with the usage of the word "another," a portion of a ward cannot be made a portion of "another" election district. Sabine Parish Police Jury, 04-0079 at 3, 879 So.2d at 354. As to Section B of LSA-R.S. 26:583, the dissent points out that in deciding the entire election district is wet, the majority ends up making Ward 3 partially wet and partially dry. As such, Section B is violated because it provides: "it [is] the intention of this Chapter that the sale of beverages covered by this Title be permitted or prohibited only in an entire ward." (Emphasis added.)
Undeniably, the legislature granted the people of Ward 3 the right to vote to be dry. There is no language within LSA-R.S. 26:583 to indicate the statute was intended to abrogate that vote of the people. As the majority acknowledges, the statute is not a model of clarity. However, this court should not read into the statute a change in the vote of the people of Ward 3 merely because the parish now has election districts in addition to wards.
Simply stated, the ward did not merge into an election district. The ward continues to exist. A portion of a ward can merge with another ward, and a portion of an election district can merge with another election district. So long as the ward has not been abolished and retains legal efficacy, the decision by the people to be dry remains in force and effect. The wards of Sabine Parish did not merge to form election districts. The lines of the election district were simply drawn through the wards such that portions of the wards correspond to portions of the election districts. If there are both wards and election districts in a given parish, the legislative mandate that the exclusion of alcoholic beverages must exist in the entire legal entity is only accomplished if the wards and election districts have the same boundaries. Under the guise of resolving internal inconsistencies within the statute, the majority elevates election districts to a position of superiority over wards. There is no statutory basis for doing so. There is nothing in the statute that indicates if the parish adopts election districts, an election district will "trump" a ward if the ward, as here, remains a viable political subdivision.
Certainly, the state can abrogate prior elections which resulted in an area being dry. State v. Sissons, 292 So.2d 523, 526 (La.1974) (The legislature can at any time alter or recall the power it has delegated to political subdivisions to regulate traffic in alcoholic beverages.) However, as indicated, the statute does not provide for *1260 abrogation of a prior election. In the absence of the statute specifying a prior election should be abrogated, I would not thwart the will of the people of Ward 3. Any hiatus in the statute should be corrected by the legislature, not by this court.
NOTES
[1] When the electorate of a political entity votes to prohibit the sale of alcoholic beverages, that political entity is considered "dry;" similarly, when the electorate of a political entity votes to permit the sale of alcoholic beverages, the political entity is considered "wet."
[2] The proces verbal of the election, included in the record as an exhibit, shows that the election was actually held on March 12, 1977. See Vol. 1, p. 44.
[3] See Vol. 2, p. 2 and Vol. 3, p. 2.
[4] Vol. 1, p. 59.
[5] La. R.S. 26:81(B)(1) provides: "No permit shall be issued by the commissioner or by any municipality or parish to authorize any business in any subdivision of the state where the business has been prohibited by referendum vote."
[6] La. R.S. 26:273(A)(1) provides: "A. The commissioner shall not: (1) Issue a permit for the conduct of a business of dealing in beverages of low alcoholic content in any subdivision of the state wherein that business has been prohibited by a local option election held under the provisions of Chapter 3 of Title 26 of the Louisiana Revised Statutes of 1950."
[7] Prior to trial, the Commissioner filed exceptions of no right and no cause of action and lack of jurisdiction against the Police Jury, complaining that the court had jurisdiction to review its decision pursuant to La. R.S. 26:105 only if a permit had been withheld, revoked or suspended. The Commissioner argued that in this case, the state permit had been granted. The district court denied the Commissioner's exceptions but ordered that the Police Jury be allowed to amend its petition to clearly invoke the court's original jurisdiction. The appellate court denied a writ taken by the Commissioner on this issue. See Sabine Parish Police Jury v. Commissioner of Alcohol and Tobacco Control, No. 03-01358 (La.App. 3 Cir. 11/13/03) (unpublished), finding no error in the district court's ruling in reliance on Pettit v. Penn, 180 So.2d 66 (La.App. 2 Cir.1965), writ refused, 248 La. 696, 181 So.2d 397 (1966). See Vol. 1, p. 36. There is no indication in the record that the Police Jury ever amended its petition to invoke the court's original jurisdiction. However, the Commissioner did not raise the issues in the appellate court or this court, and has, thus, abandoned them. We note parenthetically that the provisions of La. R.S. 26:105 and 106 are supplemented by the provisions of La. R.S. 49:964, which provide the Police Jury with the right to judicial review of the Commissioner's decision. Moreover, whether the Commissioner is a party to this action or not, the issue, regarding the proper interpretation of La. R.S. 26:583, is the same.
[8] Sabine Parish Police Jury v. Commissioner of Alcohol & Tobacco Control, 2004-78 (La.App. 3 Cir. 6/23/04), 879 So.2d 349 and Sabine Manufacturing, Inc. v. Sabine Parish Police Jury & Sheriff Guffey Pattison, 2004-80 (La.App. 3 Cir. 6/23/04), 880 So.2d 871.
[9] Sabine Parish Police Jury v. Commissioner of Alcohol & Tobacco Control c/w Sabine Manufacturing, Inc. v. Sabine Parish Police Jury & Sheriff Guffey Pattison, XXXX-XXXX (La.11/19/04), 888 So.2d 210.
[10] A parish governing body cannot simply declare itself "dry." An ordinance prohibiting the sale of liquor, without the predicate local option election, is of no force or effect. Tolar v. State, 315 So.2d 22 (La.1975); Patrick's Cafe, Inc. v. Red River Parish Police Jury, 315 So.2d 27 (La.1975). In the absence of a local option election resulting in a prohibition of the sale of alcoholic beverages, the sale of alcoholic beverages is permitted.
[11] Specifically, Act 1 of the Extraordinary Session of 1933 repealed Act 39 of 1921 which had prohibited the manufacture, sale, transportation, delivery, possession, advertisement, exportation and importation of alcoholic beverages.
[12] See Blanchard v. Gauthier, 248 La. 1107, 184 So.2d 531, 533 n. 2 (La.1966).
[13] 1968 Acts No. 208 enacted La. R.S. 26:582.1 "relative to the effect of local option elections in wards and incorporated municipalities, or portions thereof, whose boundaries are changed or which have been merged with other wards, incorporated municipalities, or portions thereof," which provided as follows:

Section 582.1 Effect of merger
When a portion of a ward or municipality is annexed or made a part of another ward, municipality or city-parish government having a population of one hundred thousand or more, the portion annexed or made a part of shall take on the legal sales characteristics, as provided in this Chapter, of the ward, municipality or city-parish government to which it is annexed or made a part of; provided, however, that this section shall not apply to any ward, municipality, or city parish government, or any portion of any of these, located within the Parish of Ouachita.
Section 2. The provisions of R.S. 26:582.1 shall be applicable to any election previously called under Title 26 or any other local option law and to any territory covered by such election which has subsequently been merged with another ward, incorporated municipality or portion thereof or whose boundary has been changed, it being the intention of this act that the sale of beverages covered by chapter 26 be permitted or prohibited only in an entire ward or incorporated municipality and not in any portion thereof.
Section 3. If any section, subsection, subdivision, paragraph, sentence or clause of this act is held invalid or unconstitutional, such invalidity shall not affect any other section, subsection, subdivision, paragraph, sentence or clause of this act which can be given effect without the invalid provision, and to this end the provisions of this act are declared to be severable.
Section 4. All laws or part of laws in conflict herewith are hereby repealed.
[14] No writs were taken to review this decision.
[15] After the 1995 amendment, La. R.S. 26:583(A) provided: "When a portion of a ward, election district, or municipality is annexed or made a part of another ward, municipality or city-parish government, the portion annexed or made a part of shall take on the legal sales characteristics, as provided in this Chapter, of the ward, election district, municipality, or city-parish government to which it is annexed or made a part of." (Emphasis supplied).
[16] No writ was taken in King to review the decision.
[17] As previously stated, this does not include a district located entirely within an incorporated municipality. See La. R.S. 26:581(2).
[18] La. R.S. 26:582(B) provides that an election shall be separately called and held, and the results separately binding for each incorporated municipality and for the unincorporated balance of the ward or election district in which it is located.
[1] Sabine, 04-78, p. 1; 879 So.2d at 354 quoting Oxford American Dictionary (2002).
[2] Sabine, 04-78, p. 1; 879 So.2d at 354 quoting Webster's Third New International Dictionary, Unabridged (1993).