KIMBALL, C.J.
| jThis case concerns a recent amendment to La. R.S. 26:583, which governs whether local-option elections for alcoholic-beverage sales remain effective after political subdivisions have been merged. In 2009, a dispute arose between Washington Parish and the owner of a retail store, plaintiff Deer Enterprises, LLC, after the store owner was denied a permit to sell alcoholic beverages. Ultimately, the trial court judge in the Twenty-Second Judicial District declared La. R.S. 26:583(C)(2) to be a local or special law in violation of La. Const. Art. Ill, § 12(A). The trial court also ruled La. R.S. 26:583(C)(2) violated plaintiffs right to equal protection under La. Const. Art. I, § 3. This is a direct appeal from a declaration of unconstitutionality, over which La. Const. Art. V, § 5(d) grants this Court jurisdiction. For the reasons that follow, we find § 583(C)(2) is neither a local nor a special law; we also find it does not impermissibly discriminate against plaintiff. We there *940 fore find § 583(C) does not violate La. Const. Art. Ill, § 12(A) or Art. I, § 3.
FACTS
In March 1976, electors in Ward 3 of Washington Parish voted to prohibit the sale of alcoholic beverages in their ward pursuant to a local-option election. In 1997, Washington Parish adopted a home-rule charter, replacing its police-jury system with | ga parish council, the members of which were elected by newly created districts. Council District 6 comprises parts of Wards 3 and 8. Ward 8, in contrast to Ward 3, previously had voted to permit the sale of alcoholic beverages. Council District 6 has not held a local-option election since its creation.
Deer Enterprises operates a convenience store, “Nemo’s,” in a portion of Ward 3 that is contained in Council District 6. In 2009, Deer Enterprises applied to the Washington Parish Council for a permit to sell beverages of low-alcoholic content for off-premises consumption. In a letter dated August 31, 2009, the parish president refused the application, citing the election by which Ward 3 had declared itself “dry.” Deer Enterprises subsequently sought a writ of mandamus to compel issuance of the permit, and the court granted the writ on September 17, 2009, citing this Court’s decision in Sabine Parish Police Jury v. Commissioner of Alcohol and Tobacco Control, 04-1833 (La.4/12/05); 898 So.2d 1244. Washington Parish subsequently filed a Motion for New Trial, based on the effect of Act 233 of the 2009 Regular Session of the legislature, which amended La. R.S. 26:583 to add subsection (C)(2) (hereinafter “the amendment” or § 583(C)(2)). Before the initial trial concluded, neither the parties nor the trial court were aware of this amendment, which had taken effect on August 15, 2009. The subsection, which exempts certain parishes from the effects of § 583, reads as follows:
Notwithstanding any other provision of law to the contrary, any parish with a population between forty thousand and forty-five thousand, based upon the latest federal decennial census, shall not be subject to the provisions of Subsections A and B of this Section and shall retain the legal sales characteristics as provided for by referendum prior to any annexation or reapportionment. La. R.S. 26:583(0(2).
According to the U.S. Census Bureau, five Louisiana parishes in 2000 had populations between 40,000 and 45,000: Avo-yelles, Webster, Lincoln, St. John the Baptist, and Washington. Because its population as measured by the 2000 census |swas 43,926, Washington Parish contends the recent amendment applies to it, and it is therefore exempted from the effects of § 583(A) and § 583(B). Deer Enterprises contends the amendment is unconstitutional, and it filed a Supplemental and Amending Petition to that effect before the new trial was held. After a hearing on January 20, 2010, the trial court found the amendment to be unconstitutional, ruling it is a local or special law in regulation of trade, as specifically proscribed by La. Const. Art. Ill, § 12(A)(6). The court ordered Washington Parish to issue the permit, and the parish government timely appealed.
LAW AND ANALYSIS
We begin by revisiting the analysis and historical background this Court provided in Sabine because it is directly relevant to the instant matter and informs the issue’s context. As we noted in that case, the legislature may delegate to political subdivisions the power to regulate traffic in alcoholic beverages. Sabine Parish Police Jury, 898 So.2d at 1250. However, *941 this delegation does not cede the legislature’s authority to alter that power at any time. Id.
After the era of Prohibition ended with the repeal of the 18th Amendment to the U.S. Constitution, the Louisiana Legislature passed laws allowing for the sale and production of alcoholic beverages. Id. The State delegated to parishes and municipalities the authority to hold local-option elections, empowering voters to decide whether to prohibit the sale of alcohol within their political subdivisions. Id. La. R.S. 26:583[1] governs the effect of local-option elections when political Rsubdivisions have been reorganized. In Sabine, the parish had reorganized itself into election districts, and Election District 6 comprised portions of Wards 3 and 5. Before the parish restructuring, Ward 3 had voted itself “dry”; Ward 5 had voted itself “wet.” As a result of this merger, we deemed Election District 6 entirely “wet,” and therefore the portion of Ward 3 contained within Election District 6 was compelled to permit the sale of alcoholic beverages. We note the instant matter presents a very similar set of factual circumstances, but it concerns another issue with entirely different considerations. The amendment in question in this case was passed after we interpreted La. R.S. 26:583 in Sabine, and it operates to exempt some parishes from the effects of that statute. We turn now to the question of whether that exemption is a valid exercise of legislative power.
The Louisiana Constitution forbids the legislature to pass a local or special law regarding any of the subjects enumerated in La. Const. Art. Ill, § 12(A).[2] However, the Constitution does not define “local law” or “special law.” This Court’s jurisprudence and legal scholars have elucidated these terms, but the meaning of “local or special law” remains somewhat obscure in some contexts. Courts have been imprecise in distinguishing between the two, but they are distinctly different legislative prohibitions. Kimball v. Allstate Ins. Co., 97-2885 (La.4/14/98); 712 So.2d 46, 50 (citing Lee Hargrave, “Statutory" and “Hortatory” Provisions of the Louisiana Constitution of 1971, 43 La. L.Rev. 647, 668 (1983)).
It is not entirely clear from the record whether the trial court found § 583(C)(2) |Bto be a local law or a special law. The written judgment simply declares Act 233 of 2009, as it amends La. R.S. 26:583, to be unconstitutional. A transcript of the hearing shows the trial court referred to the amendment alternatively as a “local law” and as a “special law,” without conclusively placing it in either category. From the Act’s legislative history, the trial court determined the law is “intentionally meant to be a local law for ... west Webster Parish, but also affects the lovely parish just north of St. Tammany and east of Tangipahoa.” Later, the court held the plaintiff had “met its burden of proof by proving clearly and convincingly that the special law-further, *942 there is no legitímate state interest and [sic] operates both in restraint of trade and against the protection rights of the plaintiff.” Apparently, the court concluded it was either a local or special law, stating: “So I do find that if not a local law, it is most certainly a special law....” Given this ambiguity in the trial court’s judgment, we must analyze both possibilities.

Whether § 583(C)(2) is a Local Law

The prohibition against certain local and special laws is “intended to reflect a policy decision that legislative resources and attention should be concentrated upon matters of general interest, and that purely local matters should be left to local governing authorities.” Kimball, 712 So.2d at 50 (citing H. Alston Johnson III, Legislative Process, 36 La. L.Rev. 549 (1976)). The terms “local” and “special” are used in contradistinction to the term “general.” Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com’n, 94-2015, p. 7 (La.11/30/94); 646 So.2d 885, 889. General laws are those that “operate equally and uniformly upon all persons brought within the relations and circumstances for which they provide or that operate equally upon all persons of a designated class founded upon a reasonable and proper classification.” Polk v. Edwards, 626 So.2d 1128, 1134 (La.1993) (citing Knapp v. Jefferson-Plaquemines Drainage Dist., 224 La. 105, 68 So.2d 774 (1953)). The ultimate distinction “between public or general laws and local or special laws is that the former affect the community as a whole, whether throughout the State or one of its subdivisions; and the latter affect private persons, private property, private or local interests.” Louisiana Paddlewheels, 646 So.2d at 889 (citing Polk, 626 So.2d at 1135).
When the operation of a law is limited to certain parishes, it is immediately suspect as a local law. Kimball, 712 So.2d at 51. A statute is generally considered to be local if it operates only in a particular locality or localities without the possibility of extending its coverage to other areas should the requisite criteria exist or come to exist there. Id. However, a law is not local, even though its enforcement may be restricted to a particular locality or localities, where the conditions under which it operates simply do not pi'evail in other localities. Id. Thus, a law is not local if its coverage can extend to other localities or areas. State v. Brazley, 00-923 (La.11/28/00); 773 So.2d 718. Generally, a law that applies to localities within a certain population is not a local law because other localities potentially can meet the population trigger and become subject to the particular law. Id.
Initially, we note the operation of the challenged amendment presently is limited to five parishes by virtue of their populations. It is therefore immediately suspect as a local law. However, § 583(C)(2) may extend its application to other parishes if the requisite criterion comes to exist there, i.e., if those parishes fall within the population range. It is also possible that the five localities presently affected, including defendant Washington Parish, may expand or contract beyond the amendment’s reach. Because the triggering criterion is a relatively small range of 5,000 residents that is tied to the latest decennial census, and the 2010 census is 17nearing completion, a shift in the amendment’s coverage in the near future appears probable. Statistics from the 2000 census show 35 parishes in Louisiana had fewer than 40,000 residents. If Washington Parish has added 1,074 residents over the past 10 years, it has grown past the amendment’s purview; if Natchitoches Parish has gained 910 residents, it will fall within the amendment’s ambit. We refer to these possibilities, regardless of their like *943 lihood, only to illustrate the potentially broad sweep of § 583(C)(2). The elastic application of the amendment, and the fluid nature of population dynamics, militate against a finding that § 588(C)(2) is prohibited as a local law.
Flexible application may not automatically render a statute general, but local laws typically contain a fixed classification. This principle is supported by legal commentators and demonstrated by our jurisprudence. Population classification statutes “are usually upheld as general laws because the courts consider the population differential as a reasonable basis for the creation of a separate class.” Huntington Odom, General and Special Laws in Louisiana, 16 La. L.Rev. 768, 773 (1956). “As long as the criteria for the population class do not prohibit subsequent entrance of other cities [or parishes] that reach the specified population, the legislation does not lose its character as a ‘general’ statute.” Johnson, 36 La. L.Rev. at 551-552. The principle is illustrated by our decision in Brazley, in which we affirmed a trial court’s judgment that Articles 340(E) and 342 of the Louisiana Code of Criminal Procedure were unconstitutional. Those provisions were based on population, but the figures used were fixed, not flexible. Both articles used the following phrase: “In any parish with a population in excess of four hundred ninety thousand, as established by the 1990 U.S. Decennial Census....” As we noted in that case, the 1990 Census figures were static. Brazley, 773 So.2d at 721. Because | gOrleans Parish was the only parish that met, or would ever meet, that population criterion, the articles operated only in one locality without the possibility of extending their coverage; therefore, the articles clearly were local laws. Id.
We recognize, of course, that a population classification may be used to mask an intent to target one locality. However, we do not concern ourselves with this legislative subterfuge when the purportedly local statute’s effects are general. The trial court in this matter found from the legislative history of § 583(C)(2) that it was “intentionally meant to be a local law for ... west Webster Parish,” and therefore determined it was a local law despite the fact that it also applies to Washington Parish. In so finding, the trial court apparently dismissed the law’s effects on other localities as incidental or unintended. However, a law that has general effects is not necessarily made local because it was drafted with one locality in mind. The fact that Washington Parish is the defendant in this matter, seeking to avail itself of the amendment’s exemption and preserve the wishes of Ward 3 to remain “dry,” obviously implicates interests beyond the locality that was the statute’s purported beneficiary. As we have explained, the amendment applies to five parishes presently but may extend its coverage in the future. Because the statute’s operation has general effects, we need not inquire into its legislative history to ascertain any underlying intent.
Ultimately, the population classification contained in § 583(C)(2) persuades us that it is not prohibited as a local law. The five parishes presently affected do not otherwise share characteristics such as geographical location; they are in separate regions of the State, with no apparent commonality relevant to the law’s effects other than their population and rural character. Because the statute connects population to the latest decennial census, it ensures the possibility that its coverage may change. We |9now turn to the question of whether the amendment is a special law.

Whether § 583(C)(2) is a Special Law

A special law confers special privileges or imposes peculiar disabilities *944 or burdensome conditions in the exercise of a common right upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law. Kimball, 712 So.2d at 52. A special law is generally one that “operates on and affects only a fraction of the persons or a portion of the property encompassed by a classification, granting privileges to some persons while denying them to others.” Id. (citing Odom, 16 La. L.Rev. at 770). In other words, a law is special if it “affects only a certain number of persons within a class and not all persons possessing the characteristics of the class.” Teachers’ Retirement System of Louisiana v. Vial, 317 So.2d 179, 183 (La.1975). A special law is “directed to secure some private advantage or advancement for the benefit of private persons.” Id. The prohibition on special laws “represents an important safeguard against the abuse of legislative power on behalf of special interests.” Id.
Initially, we note the amendment appears to have characteristics of a special law because it operates on a fraction of persons in certain parishes that have reorganized their political structure. However, § 583(C)(2) does not affect “the exercise of a common right,” though it appears to grant the “privilege” of exempting certain parishes from § 583(A) and § 583(B). The amendment does not bear the significant distinction of securing private advantages for private persons. Ultimately, it is not aimed at special interests.
Deer Enterprises argues the amendment is a special law because it “operates upon and affects only a fraction of the persons or property encompassed by the classification.” Plaintiff contends § 583(C)(2) subjects those parishes that meet the |lflpopulation criterion “to a different set of rules simply because of demographic distribution,” which is a “patent grant of privileges to some while denying them to others.” This argument implicitly defines the classification broadly by suggesting that the five affected parishes are treated differently from the other parishes. In other words, plaintiff reads the amendment as treating certain parishes as a subset of a larger class, which plaintiff apparently defines as those parishes that have reorganized their political subdivisions after parts of those subdivisions held local-option elections. Assuming arguendo that plaintiff correctly defines the improper classification, we next consider whether the classification grants privileges.
To determine whether the amendment grants or denies privileges, we must analyze the nature of the alleged privilege. A privilege is a “special legal right, exemption, or immunity granted to a person or class of persons; an exception to a duty. A privilege grants someone the legal freedom to do or not to do a given act. It immunizes conduct that, under ordinary circumstances, would subject the actor to liability.” Black’s Law Dictionary 1234 (8th ed.2004). Because plaintiff Deer Enterprises is the owner of a retail store and wishes to sell alcohol, plaintiff complains that privilege has been denied it. No citizen has an inherent right to sell alcoholic beverages, and “the business may be permitted under conditions such as will limit to the utmost the evils associated therewith.” City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239 (1954). Selling alcoholic beverages therefore may be considered a privilege. See Roksvaag v. Reily, 237 La. 1094, 113 So.2d 285 (1959); see also Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So.2d 248 (1949). However, denying plaintiff this privilege is an incidental effect of § 583(C)(2). The amendment does not directly confer or abrogate that privilege. The statute con *945 cerns the effect of local-option elections, and | nit is those elections that decide whether a retail establishment may sell alcoholic beverages. In other words, it is the electors of that ward or district who control whether it will be “dry,” not § 583(C)(2). Therefore, the amendment does not grant or deny the privilege of selling alcoholic beverages.
The amendment concerns the effect of referenda after political restructuring, and the exemption from that effect is the “privilege” at issue. To be specific, the amendment grants to portions of political subdivisions in some parishes the “privilege” of maintaining the effect of their local-option elections. We do not read § 583(C)(2) to grant a privilege as proscribed by the Louisiana Constitution. If it grants the freedom “to do or not to do a given act,” the “act” involved is the enforcement by parish authorities of local referenda. Although it grants an exemption from, or immunity to, § 583(A) and § 583(B), it does not create an exception to a duty because the effect of local referenda is not a duty. It does not immunize any actors from liability. This examination of the rights concerned leads us to the conclusion that § 583(C)(2) does not grant any unconstitutional privilege. As we noted in Sabine, the electors in any ward or election district may petition to hold a local-option election pursuant to La. R.S. 26:582. The amendment does not abrogate that right; that right is preserved.
Finally, we are persuaded § 583(C)(2) is not a special law because the persons it affects are parish residents generally, not business owners specifically. Deer Enterprises does not allege § 583(C)(2) is intended to benefit private parties, and we cannot discern any special interests that benefit from it. Although residents of some “dry” wards benefit from the amendment in the sense that then votes remain effective, it can hardly be said this is the type of private advantage the Louisiana Constitution proscribes. Hypothetically, the amendment could operate to enable a “wet” ward to [ ^remain so after it were made a part of a “dry” election district, in which case the amendment would benefit private sellers of alcoholic beverages in those localities. However, plaintiff does not allege such a circumstance, and it is not before us. Moreover, the fact that the amendment operates both ways-to preserve the effect of local-option referenda, whether the result is “dry” or “wet”-persuades us no special interests are involved. Deer Enterprises argues § 583(C)(2) contains elements of both local and special laws, apparently contending the special interests involved are the affected localities. But this argument conflates the very different aims of the constitutional prohibition. Local laws are prohibited because they benefit certain localities; special laws are prohibited because they benefit special interests. The two are not equivalent. Although we do not reject the possibility that a sort of hybrid local and special law might exist, § 583(C)(2) is not that legislative anomaly. Although it operates “only in a particular locality or localities,” its effects are triggered by population shifts. Although it ostensibly confers a kind of privilege on portions of those localities, it does not benefit special interests. In short, it is not an unconstitutional abuse of legislative power.

Whether § 583(C)(2) Violates Equal Protection Rights

Deer Enterprises also alleges the amendment violates the constitutional provision that “No person shall be denied equal protection of the laws.” La. Const. Art. 1, § 3. Under this provision courts must decline to enforce a legislative classification of individuals in three situations: (1) When the law classifies individuals by *946 race or religious beliefs, it shall be repudiated completely; (2) When the law classifies persons on the basis of birth, age, sex, culture, physical condition or political ideas or affiliations, its enforcement shall be refused unless the State shows the classification has a reasonable basis; (3) When the law classifies | ^individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate State interest. Sibley v. Louisiana Board of Supervisors of Louisiana State Univ., 477 So.2d 1094, 1107 (La.1985).
Plaintiff contends § 583(C)(2) created a class of persons defined by those individuals living in parishes with a population of 40,000 to 45,000. The trial court apparently agreed, finding the amendment “operates ... against the protection rights of the plaintiff.” However, we reject the fundamental premise of plaintiffs argument, i.e. that § 583(C)(2) creates a class of persons. On the contrary, the amendment does not concern individuals. It refers to “any parish” and makes no mention of persons; it therefore does not classify individuals. We discussed this critical distinction in Morial v. Smith & Wesson Corp., 2000-1132 (La.4/3/01); 785 So.2d 1. In that case, the City of New Orleans and another plaintiff challenged the constitutionality of a statute, which the city contended violated its equal protection rights. But Article I of the Louisiana Constitution protects only the rights of “persons” and does not protect government entities against unjust government action. Id. at 15. Although Washington Parish is the defendant in this matter and does not challenge the constitutionality of § 583(C)(2), the same logic applies to the parties and the statute in this matter. The amendment classifies parishes, not individuals, according to their population, and the protections of La. Const. Art. I therefore do not apply.
The trial court was clearly wrong in ruling the amendment violates the plaintiffs equal protection rights. Because we find § 583(C)(2) does not classify individuals, we need not reach the issue of whether it suitably furthers an appropriate state interest.
CONCLUSION
114Because La. R.S. 26:583(0(2) applies to several, dissimilar parishes based on the changeable characteristic of the parishes’ populations, with the possibility of extending its coverage to other parishes, it is not a local law. Because it does not benefit special interests, it is not a special law. Because it does not impermissibly classify individuals, it does not violate plaintiffs equal protection rights. Accordingly, plaintiffs constitutional challenge to the amendment fails. The judgment of the trial court is reversed.
REVERSED.
WEIMER, J., concurs & assigns reasons.

. The statute provides, in pertinent part:
A. When a portion of a ward, election district, or municipality is annexed or made a part of another ward, election district, municipality, or city-parish government, the portion annexed or made a part of shall take on the legal sales characteristics, as provided in this Chapter, or the ward, election district, municipality, or city-parish government to which it is annexed or made a part of.

. The provision states, in pertinent part:
Except as otherwise provided in this constitution, the legislature shall not pass a local or special law:
(1) For the holding and conducting of elections, or fixing or changing the place of voting.
[[Image here]]
(6) Regulating labor, trade, manufacturing, or agriculture, or agriculture; fixing the rate of interest.