## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2018 CA 1436

DR. HERBERT SIMMONS, JACKSON PARISH BRANCH (JPB)
NAACP THROUGH [ITS] PRESIDENT WINDY CALAHAN[,]
MAXIE MONROE, JOHN MCCARTY, ET AL

VERSUS

JOHN B. EDWARDS, GOVERNOR OF STATE OF LOUISIANA

*DATE OF JUDGMENT:*   AUG 0 7 2019

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
NUMBER 659780, SECTION 22, PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

HONORABLE TIMOTHY E. KELLEY, JUDGE

* * * * * *

| | |
|---|---|
| Ernest L. Johnson<br>Baton Rouge, Louisiana | Counsel for Plaintiffs-Appellants<br>Dr. Herbert Simmons and NAACP<br>Jackson Parish Branch |
| Madeline Sue Carbonette<br>Angelique Duhon Freel<br>Alicia Edmond Wheeler<br>Assistant Attorneys General<br>Baton Rouge, Louisiana | Counsel for Defendants-Appellees<br>State of Louisiana through<br>Governor John Bel Edwards and<br>Attorney General Jeff Landry |
| Michael John O'Shee<br>Martha R. Crenshaw<br>Steven M. Oxenhandler<br>Alexandria, Louisiana | Counsel for Defendant-Appellee<br>Jackson Parish Police Jury |

* * * * * *

BEFORE: WELCH, CHUTZ, AND LANIER, JJ.

Disposition: AFFIRMED.

Welch, J. dissents and assigns reasons

**CHUTZ, J.**

Plaintiffs-appellants, Dr. Herbert Simmons and the Jackson Parish Branch of the NAACP,[1] appeal the trial court's judgment, sustaining a peremptory exception raising the objection of no cause of action and dismissing, with prejudice, their claims for injunctive and declaratory relief against defendants-appellees, the State of Louisiana through Governor John B. Edwards and Attorney General Jeff Landry,[2] and the Jackson Parish Police Jury, arising out of allegations that La. Acts 2017, No. 171 (Act 171), addressing certain hospital service district board membership, is unconstitutional and illegal. We affirm.

With an effective date of August 1, 2017, the Louisiana legislature passed Act 171, which states:

> Section 1. Notwithstanding any provision of law to the contrary, the governing authority of any parish with a population greater than sixteen thousand and less than seventeen thousand, according to the latest federal decennial census, shall have a hospital service district board governed by five commissioners, who shall be qualified voters and residents of the parish and shall possess the following qualifications: one commission member who shall possess financial expertise as the officer or owner of a bank or group of banks in the parish, one commission member who shall possess legal expertise as a licensed attorney in good standing in the parish who shall not be employed by the district attorney's office, one commission member who shall possess medical expertise and is a licensed practitioner at the hospital service district hospital in the parish, one commission member who shall possess business or accounting expertise and is a licensed certified public accountant or who holds a master's degree in business administration and practices in the parish, and one commission member who shall have managerial expertise and is employed by a manufacturer located in the parish of products made from pulp wood or other fibrous substances with more than two hundred employees. The commissioners shall be appointed by a majority vote of the police jury of the parish for six year terms.

---

[1] In addition to Dr. Simmons and the Jackson Parish Branch of the NAACP, this lawsuit was also commenced with Maxie Monroe and John McCarty as party plaintiffs. But Monroe was subsequently dismissed at her request, and in the second amending petition, McCarty was not identified as a party plaintiff.

[2] The original petition named Governor Edwards as the sole defendant. After Attorney General Landry intervened to represent the interests of the State, Governor Edwards was dismissed from the lawsuit in his individual capacity.

2

Section 2. The police jury of the parish shall ensure that all necessary appointments are made such that the commission members appointed pursuant to this Act shall assume their responsibilities on August 1, 2017.

Mindful that the sustaining of an objection of no cause of action and dismissing of a petition is proper only when the allegations of the petition itself clearly showing that plaintiffs do not have a cause of action, we note that the burden of proof is with the mover of the exception and our review of a judgment sustaining an exception of no cause of action is reviewed by an appellate court *de novo*. See *Louisiana Pub. Serv. Comm'n v. Louisiana State Legislature*, 2012-0353 (La. App. 1st Cir. 4/26/13), 117 So.3d 532, 537 (en banc).

**Local or Special Law:**

On appeal, citing La. Const. Art. III, §12B,[3] plaintiffs contend that the trial court erred in its conclusion that Act 171 was not a special or local law. The trial court stated:

> [T]he fact that [Act 171] is not unconstitutional [as] a special or local law, the [Louisiana] Supreme Court has already decided this issue in [*Deer Enterprises, LLC v. Parish Council of Washington Parish*, 2010-0671 (La. 1/19/11), 56 So.3d 936], and I have explained how potentially other parishes could fall within [the ambit of Act 171], and potentially they could fall outside of it, and that the [act] utilizes the correct census under our law.

The *Deer Enterprises* court explained:

> The prohibition against certain local and special laws is intended to reflect a policy decision that legislative resources and attention should be concentrated upon matters of general interest, and that purely local matters should be left to local governing authorities. The terms "local" and "special" are used in contradistinction to the term "general." General laws are those that operate equally and uniformly upon all persons brought within the relations and circumstances for which they provide or that operate equally upon all persons of a designated class founded upon a reasonable and proper classification. The ultimate distinction between public or general laws and local or special laws is that the former affect the community as a whole, whether throughout the State or one of its subdivisions; and the latter affect private persons, private property, private or local interests.

---

[3] La. Const. Art. III, §12B provides, "The legislature shall not indirectly enact special or local laws by the partial repeal or suspension of a general law."

When the operation of a law is limited to certain parishes, it is immediately suspect as a local law. A statute is generally considered to be local if it operates only in a particular locality or localities without the possibility of extending its coverage to other areas should the requisite criteria exist or come to exist there. However, a law is not local, even though its enforcement may be restricted to a particular locality or localities, where the conditions under which it operates simply do not prevail in other localities. Thus, a law is not local if its coverage can extend to other localities or areas. Generally, a law that applies to localities within a certain population is not a local law because other localities potentially can meet the population trigger and become subject to the particular law.

*Deer Enterprises*, 56 So.3d at 942 (citations and quotations omitted).

The operation of Act 171 is presently limited to the parish of Jackson by virtue of its population. It is therefore immediately suspect as a local law. However, as noted by the trial court, the provisions of Act 171 may extend its application to other parishes if the requisite criterion comes to exist there, *i.e.*, if those parishes fall within the population range. It is also possible that Jackson Parish may expand or contract beyond the reach of Act 171. Because the triggering criterion is the range of 16,000 residents, which is tied to the latest decennial census, and the 2020 census is nearing, a shift in the act's coverage in the future appears possible. Indeed, according to plaintiffs, recent statistics show a decline in the population of Jackson Parish since the 2010 census. The elastic application of Act 171 and the fluid nature of population dynamics militate against finding it is prohibited as a local law.

In contrast to a local law, the *Deer Enterprises* court provided the following explanation of a special law:

A special law confers special privileges or imposes peculiar disabilities or burdensome conditions in the exercise of a common right upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law. A special law is generally one that operates on and affects only a fraction of the persons or a portion of the property encompassed by a classification, granting privileges to some persons while denying them to others. In other words, a law is special if it affects only a certain

number of persons within a class and not all persons possessing the characteristics of the class. A special law is directed to secure some private advantage or advancement for the benefit of private persons. The prohibition on special laws represents an important safeguard against the abuse of legislative power on behalf of special interests.

*Deer Enterprises*, 56 So.3d at 543-44 (citations and quotations omitted).

The objects and purposes of hospital service districts and the governing bodies include ownership and operation of hospitals for the care of persons suffering from illnesses or disabilities which require that patients receive hospital care; the administration of other activities related to rendering care to the sick and injured or in the promotion of health which may be justified by the facilities, personnel, funds and other requirements available; the promotion and conducting of scientific research and training related to the care of the sick and injured insofar as such research and training can be conducted in connection with the hospital; participation so far as circumstances may warrant in any activity designed and conducted to promote the general health of the community; and the cooperation with other public and private institutions and agencies engaged in providing hospital and other health services to residents of the district. See La. R.S. 46:1052 (relative to hospital service districts created by police juries of parishes).

In light of the objects and purposes of hospital service districts, Act 171 does not appear to affect "the exercise of a common right," and does not bear the significant distinction of securing private advantages for private persons. Thus, the trial court correctly implicitly determined that Act 171 is not aimed at special interests.

Moreover, to the extent that plaintiffs are asserting that Act 171 subjects those parishes that meet the population criterion to a different set of rules simply because of demographic distribution which, they maintain, shows a patent grant of privileges to some while denying them to others, we find no merit in this

5

contention. As noted by the *Deer Enterprises* court, a privilege is a special legal right, exemption, or immunity granted to a person or class of persons; an exception to a duty. A privilege grants someone the legal freedom to do or not to do a given act. *Deer Enterprises*, 56 So.3d at 944. Because Act 171 includes defined qualifications for commissioners, none of which Dr. Simmons and ostensibly all other African American residents of Jackson Parish possess, a privilege has been bestowed on those that meet the criteria. But the fallacy of plaintiffs' assertion is that no citizen has an inherent right to an appointment on a hospital service district board. It is the members of the Jackson Parish Police Jury who determine those it will appoint to the Jackson Hospital Service District. Therefore, Act 171 does not deny or grant the privilege of appointing members to the hospital service district board. That right remains with the parish police jury.

Lastly, based on the allegations of plaintiffs' petition and their assertions before the trial court and now on appeal, they have simply failed to identify any "special interests" that are served by Act 171. Accordingly, Act 171 is not an unconstitutional abuse of legislative power.

**Prohibited Retroactive Application:**

Plaintiffs assert that Act 171 is a substantive law that is retroactive in its application because it relies on the 2010 census. However, a clear reading of Act 171 shows that the population criterion is based on "the latest federal decennial census," rather than merely the 2010 census. See and cf. *State v. Brazley*, 2000-0923 (La. 11/28/00), 773 So.2d 718, 721 (enactment was unconstitutional where it specified the "1990 U.S. Decennial Census," a fixed determination).

According to La. C.C. art. 6, "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a

6

legislative expression to the contrary." Additionally, La. R.S. 1:2 provides that "[n]o Section of the Revised Statutes is retroactive unless it is expressly so stated." To determine whether a law should be retroactively applied, courts must first ascertain whether the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, the inquiry is at an end. If the legislature did not, the court must classify the enactment as substantive, procedural, or interpretive. Notwithstanding this analysis, even where the legislature has expressed its intent to give a law retroactive effect, the law may not be applied retroactively if doing so would impair contractual obligations or disturb vested rights. *MACWCP II LLC v. Williams*, 2017-0004 (La. App. 1st Cir. 9/15/17), 231 So.3d 665, 669, writ denied, 2017-1750 (La. 12/5/17), 231 So.3d 624.

Plaintiffs maintain that because Dr. Simmons was an appointed commissioner of the Jackson Parish Hospital Service District Board who had not completed his term,[4] the application of Act 171, requiring the specified criteria for commissioners appointed to the hospital service district board, operated to retroactively impair contractual obligations or disturb him of his vested rights.

In its oral reasons for judgment, the trial court stated:

> [T]here is no vested right in an appointed position. It is an appointed position that can be dissolved in a number of ways over the objection of the appointee....
>
> There is no vested right under our federal constitution or under our state constitution to an appointed position to a body. There being no vested right, there is no concern about whether [Act 171] is retroactive.

The appointment to a public office is not a contract. *Boyer v. St. Amant*, 364 So.2d 1338, 1340 (La. App. 4th Cir.), writ denied, 365 So.2d 1108 (La. 1978).

---

[4] See La. R.S. 46:1053(BB) ("In the parish of Jackson, the Jackson Parish Hospital Service District shall be governed by a commission composed of seven members. The additional members provided for by this Subsection shall be appointed by the police jury for initial terms of six years each and their successors shall serve six-year terms.").

7

Additionally, it is well settled that a person elected to a public office has no vested prospective right that prevents a legislative branch, or other proper authority, from abolishing the office. See *Hoag v. State ex rel. Kennedy*, 2001-1076 (La. App. 1st Cir. 11/20/02), 836 So.2d 207, 220 (*en banc*), writ denied, 2002-3199 (La. 3/28/03), 840 So.2d 570. Accordingly, as a matter of law, Act 171 did not impair any contractual obligations affecting Dr. Simmons -- or any other potential African American appointee -- in either maintaining the appointment as a commissioner to Jackson Parish Hospital Service District Board or as to any emoluments of that appointment. And for the same reasons, neither Dr. Simmons nor any other African American resident of Jackson Parish was deprived of a vested right.

**Violation of the Voting Rights Act of 1965:**

Plaintiffs aver that by eliminating his appointment, Act 171 eliminated the opportunity for African Americans to participate in the electoral process in violation of the Voting Rights Act. According to 52 U.S.C.A. § 10301(a):

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State ... in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in ... this title.

In addressing this assertion by plaintiffs, the trial court stated:

> [Act 171] does not violate the Voting Rights Act, as there is no elected position associated with [plaintiffs' claims]. There is no general voting on this issue. It is the [police jury] that makes the appointment. It is not an elected position.... There is no right to have a vote on these matters from the general population.

Plaintiffs have failed to allege any facts that could support a finding that they were entitled to vote on the appointment of the commissioner for the Jackson Hospital Service District Board so as to support a violation of the Voting Rights Act.

8

**Equal Protection Violation:**

Plaintiffs claim that Act 171 violated their equal protection rights. See La. Const. Art. I, §3; U.S. Const. Amendment 14. They urge that because Act 171 applies only to Jackson Parish, it treats the parish differently from all other parishes with hospital service districts.

Generally, the state constitutional guarantee of equal protection mandates that state laws affect alike all persons and interests similarly situated. The equal protection clause, however, does not require absolute equality or precisely equal advantages. It is possible for parties to be treated differently without violation of equal protection rights. Equal treatment of all claimants in all circumstances is not required. The law merely requires equal application in similar circumstances. Where the challenged classification is based on grounds other than discrimination because of birth, race, age, sex, social origin, physical condition, or political or religious ideas, the law creating the classification is presumed to be constitutional. Thus, the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the act fails to serve a legitimate government purpose. *Dale v. Louisiana Sec'y of State*, 2007-2020 (La. App. 1st Cir. 10/11/07), 971 So.2d 1136, 1143 (per curiam).

Initially, we question whether the population criterion set forth in Act 171 is alike and similarly situated to persons and interests in other hospital service districts so as to require the state constitutional guarantee of equal protection. But even assuming arguendo that is does, because Act 171 is not based on any suspect classification, it requires only that the legislature's enactment serve a legitimate governmental purpose. The powers and duties of commissioners to hospital service district boards include representing the public interest in providing hospital and medical care in the district; providing advice to the police jury and the hospital

9

director on problems concerning the operation of the hospital and other facilities; making, altering, amending, and promulgating rules and regulations governing the conduct of the hospital; conducting hearings and passing upon complaints by or against any officer or employee of the district; reviewing and modifying, or setting aside any action of the officers or employees of the district which the commission may determine to be desirable or necessary in the public interest; appointing, with the approval of the medical staff, a director of the hospital and performing such other duties as may now or hereafter be required by law; appointing the necessary standing and special committees that may be necessary to carry out the purposes of the hospital service district; establishing rates of pay for the use of facilities provided by the district; and entering into lease agreements with recognized and duly constituted nonprofit associations that are primarily engaged in the operation of hospitals. See La. R.S. 46:1055 (relative to the powers and duties of commissioners of hospital service districts created by police juries of parishes). Given the objects and purposes of hospital service districts, see La. R.S. 46:1052, as well as the duties required of a hospital service district commissioner, we can readily discern that the particularized qualifications of commissioners to the hospital service district board of parishes with populations of 16,000 is legitimately served by the appointments of persons with specialized areas of expertise. Therefore, plaintiffs have failed to allege an equal protection violation.

**Due Process Violation:**

Plaintiffs suggest that Act 171 violated their substantive due process rights, suggesting that their rights to vote and participate in the electoral process are fundamental for which they cannot be deprived. See La. Const. Art. I, §2; U.S. Const. Amendments 5 and 14.

A statute violates notions of substantive due process when it does not bear a real and substantial relationship to an appropriate governmental objective. The test is whether the regulation is reasonable in relation to the goal to be attained and is adopted in the interest of the community as a whole. *Dale*, 971 So.2d at 1143.

The barebones allegations of fact contained in plaintiffs' petition do not state how or when they were denied the right to vote or otherwise participate in the electoral process. Act 171 clearly bears a real and substantial relationship with the goals of hospital service district boards. See e.g., La. R.S. 46:1052 and 1055. Additionally, a reasonable relationship exists between the hospital service districts' goals and the provisions of Act 171, which specifies certain qualifications for particularized expertise of the appointed commissioners. Accordingly, plaintiffs have failed to allege any substantive due process violations.

After a thorough review of the allegations of plaintiffs' petition, we agree with the trial court that plaintiffs have failed to state a cause of action entitling them to either injunctive or declaratory relief. Subsequent to an earlier amendment of their petition, the trial court allowed plaintiffs to amend their petition a second time, after a hearing on September 7, 2017. Although La. C.C.P. art. 934 permits amendment of the petition when the grounds of the objection pleaded by the peremptory exception may be removed, on appeal, plaintiffs do not contend that they are entitled to another amendment, and we find no error in the trial court's dismissal of all their claims against defendants. See *Rombach v. State ex rel. Div. of Admin.*, 2015-0619 (La. App. 1st Cir. 12/23/15), 2015 WL 9464500, *7, writ not considered, 2016-00214 (La. 4/4/16), 190 So.3d 1200.

11

**DECREE**

For these reasons, the trial court's judgment is affirmed. Appeal costs are assessed against plaintiffs-appellants, Dr. Herbert Simmons and the Jackson Parish Branch of the NAACP.

**AFFIRMED.**

DR. HEBERT SIMMONS, ET AL.

VERSUS

JOHN B. EDWARDS, GOVERNOR
OF THE STATE OF LOUISIANA

2018 CA 1436

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

WELCH, J., dissenting.

I disagree with the majority's opinion that Act 171 is not a local or special law. Despite the act's population criterion of "a population greater than sixteen thousand and less than seventeen thousand, according to the latest federal decennial census," which is presently limited to Jackson Parish by virtue of its population, I find that the legislative history indicates that the legislature intended Act 171 to be a local law and operate in the particular locality of Jackson Parish. See **State v. Brazley**, 2000-0923 (La. 11/28/00), 773 So. 2d 718, 721-22.

Legislation is the solemn expression of legislative will, and, therefore, the interpretation of the law involves, primarily, the search for the legislature's intent. **Motorola, Inc. v. Associated Indem. Corp.**, 2002-0716 (La. App. 1 Cir. 4/30/03), 867 So. 2d 715, 719. Intent expressed at the appropriate legislative committee meetings is an aid to the courts in determining the true legislative intent and purpose behind the law. **Bridges v. Smith**, 2001-2166 (La. App. 1 Cir. 9/27/02), 832 So. 2d 307, 311, writ denied, 2002-2951 (La. 2/14/03), 836 So. 2d 121.

The broadcast archived video of the Senate Committee on Health and Welfare for April 26, 2017, reflects, with regard to Act 171 (Senate Bill No. 219), that the bill was presented by its author, Senator James R. "Jim" Fannin, who explained that the bill dealt with certain hospital service districts:

> [I]t is a population of between 16,000 and 17,0000, and you know, **it's a hospital in my parish, where I live**. We've had many issues through the years even when I

was president of the police jury. It's a rural hospital, and I think all of you know what challenges today that rural hospitals, along with many other hospitals have, financially.[1] [Emphasis added.]

Senator Fannin also presented his bill before the House Committee on Health and Welfare. The archived video for May 18, 2017, reflects that Senator Fannin testified:

> This bill does two things: it changes the number of hospital board members in a service district with a parish population 16 to 17,000, **which is only one parish in the state**. And the five board members that will be on the board, it puts a criterion in place by which the qualifications that they would have to have in order to be appointed by the police jury. The policy jury appoints the seven now. The policy jury would continue to appoint them, it would just be five instead of seven. And those five would have to have qualifications in order to be appointed by the jury."[2] [Emphasis added.]

Act 171 specifically requires that "one commission member who shall have managerial expertise and is employed by a manufacturer located in the parish of products made from pulp wood or other fibrous substances with more than two hundred employees." This provision only applies to Jackson Parish. As Senator Fannin pointed out in the committee meeting as he was explaining his bill, this provision was placed in the legislation only because the local paper mill had to be within a certain distance from the hospital emergency room. Senator Fannin wanted someone from the paper mill on the hospital service board for the Jackson Parish Hospital.

It is clearly evident that the legislature intended Act 171 to apply to Jackson Parish, and more specifically, to the hospital service board for the Jackson Parish

---

[1] *Louisiana State Senate*, **Senate Broadcast Archived Videos**, "Health and Welfare" (April 26, 2017), 6:13-6:51, http://senate.la.gov/video/videoarchive.asp?v=senate/2017/04/042617H~W_0 (last accessed July 18, 2019).

[2] *Louisiana House of Representatives*, **Archived Video**, "Health and Welfare" (May 18, 2017), 4:49-5:28, http://house.louisiana.gov/H_Video/VideoArchivePlayer.aspx?v=house/2017/may/0518_17_HW (last accessed July 18, 2019).

Hospital located in Jonesboro, to which Senator Fannin repeatedly referenced when discussing the specifics of his bill. For these reasons, I find that Act 171 is a local law in violation of La. Const. Art. III, § 12. I find that the plaintiffs have asserted a valid cause of action.[3]

Further, the plaintiffs have set forth a cause of action of racial discrimination in alleging that this bill targeted one African-American for removal from the hospital service board for the Jackson Parish Hospital in violation of the Louisiana Constitution.

I would reverse the trial court's sustaining of the defendants' peremptory exception raising the objection of no cause of action and reinstate the plaintiffs' claims for injunctive and declaratory relief.

---

[3] The House of Representatives and Senate Archived Videos prove conclusively that Act 171 was intended to be a local law.