STEPHEN J. WINDHORST, Judge.
|2Plaintiff, Mabel Daigle, appeals from a trial court ruling granting defendant’s motion for summary judgment and dismissing her claims against defendant, John C. Steck, M.D. We affirm the decision of the trial court.
Hurricane Katrina made landfall in Louisiana in August of 2005, causing extensive damage to the Louisiana Gulf Coast, and severely impacting the infrastructure of south Louisiana hospitals. As a result, then Governor Katherine Blanco issued Executive Orders declaring a state of public health emergency, in effect until December 31, 2005[1] thereby invoking the standard of care for health care providers as set forth in La. R.S. 29:771(2)(c). Section (2)(c) provides that, for private liability: “During a state of public health emergency, any health care providers shall not be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct.”
| 3On November 28, 2005, during this declared state of public health emergency, Ms. Daigle was operated on by Dr. Steck who performed a laminectomy for a pinched nerve. After several days of what she described as “intense pain,” an x-ray revealed a foreign object near the incision site. A second surgical procedure was performed and the foreign object, a sponge, was removed.
Ms. Daigle filed a complaint with the Medical Review Board, and the Medical Review Panel rendered its decision on September 17, 2009, finding that “The evidence does not support the conclusion that the defendants (West Jefferson Medical Center and Dr. John C. Steck) failed to meet the applicable standard of care as charged in the complaint.” The Panel further said that the prevailing standard of care was that set forth in La. R.S. 29:771B(2)(c), and that there was no evidence of gross negligence or willful misconduct.
Ms. Daigle filed her petition for damages on December 23, 2009, against Dr. Steck and West Jefferson Medical Center. Ms. Daigle did not request service on West Jefferson Medical Center, and it was dismissed from this suit on June 17, 2010.
Thereafter, Dr. Steck filed a motion for summary judgment. In the motion, Dr. Steck argued the applicability of La. R.S. 29:771B(2)(c). He contended that Ms. Dai-gle was requiréd to prove that he was grossly negligent or committed willful misconduct. Dr. Steck stated that Ms. Daigle did not have any expert witness to establish gross negligence, and therefore she would not be able to meet her burden of proof at trial. Ms. Daigle countered that the State of Emergency Proclamation did not apply to surgery and medical providers and patients that were not related to or part of Hurricane Katrina. She further argued that Dr. Steck was grossly negligent, and that his liability was established by the doctrine of res ipsa loquitor. Ms. Daigle introduced a medical report in the form of a letter from Dr. RK. Andrew Larson, a board certified general surgeon with a general and bariatric surgery practice in Palm Beach, Florida. He opined that “leaving a foreign body unintentionally in the patient then closing the operative site then discharging the patient home was a negligent act below the standard of care.”
On May 22, 2013, the trial court rendered a judgment on the motion for sum *1283 mary judgment, giving Ms. Daigle until June 21, 2013 to “submit evidence into the record, from a surgery expert, through a deposition or an affidavit, showing that she can support her burden of proof at trial of proving gross negligence or willful conduct, in accordance with La. R.S. 29:771[.]” Thereafter, Ms. Daigle timely produced the same letter from Dr. Larson, after the doctor had it notarized. On August 14, 2013, Ms. Daigle produced a second affidavit from Dr. Larson. On September 27, 2013, the trial court granted Dr. Steck’s motion for summary judgment, finding that the evidence provided by the plaintiff was insufficient to show that she could support her burden of proof at trial. After the denial of her motion for new trial, Ms. Daigle appealed.
In this appeal, Ms. Daigle disputes the trial court’s granting the motion for summary judgment. She challenges the trial court’s application of La. R.S. 29:771, arguing that La. R.S. 29:771 is inapplicable because her operation was in no way related to Hurricane Katrina. She contends that the trial court did not properly consider the doctrine of fault as stated in La. C.C. art. 2315. She also contends that the doctrine of negligence per se is applicable, that it was up to the defendant to prove that he was not negligent, and that she was not required to provide an affidavit or other pleading in her defense against the motion for summary judgment. Finally, Ms. Daigle claims that the doctrine of res ipsa loquitur is applicable in this case.
I..¡Summary judgment “shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2). The party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim. La. C.C.P. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to show that he will be able to meet his evidentiary burden of proof at trial, no issue of material fact exists and the moving party is entitled to summary judgment. Id.
On appeal, our review of summary judgments is de novo using the identical criteria that govern the district court’s consideration of whether summary judgment is appropriate. In re Succession of Holbrook, 13-1181 (La.1/28/14), — So.3d —, 2014 WL 340980. The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. Muller v. Carrier Corp., 07-770 (La.App. 5 Cir. 4/15/08), 984 So.2d 883, 885.
As stated supra, La. R.S. 29:771 B(2)(c) provides that “During a state of public health emergency, any health care providers shall not be civilly liable for causing the death of, or, injury to, any person or damage to any property except in the event of gross negligence or willful misconduct.” (Emphasis added.)
Despite Ms. Daigle’s arguments to the contrary, La. R.S. 29:771 does not provide for a limited set of health care providers, nor does it limit its application to | fionIy those medical personnel rendering emergency assistance voluntarily due to the emergency in the area.
Not only does plaintiff argue the applicability of the medical malpractice statutes, she also contends that Dr. Steck is liable under general negligence princi- *1284 pies as set forth in La. C.C. art. 2315. “It is a fundamental rule of statutory construction that when two statutes deal with the same subject matter, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character.” Burge v. State, 10-2229 (La.2/11/11), 54 So.3d 1110, 1113; Pignona v. Father, 13-192. (La.App. 5 Cir. 10/9/13), 128 So.3d 390, 398. Therefore, the burden of proof set forth in the medical malpractice statutes prevail over general negligence. Furthermore, the burden of proof set forth in La. R.S. 29:771 relative to medical malpractice during a declared state of medical emergency prevails over the more general medical malpractice statutes.
As such, in order to prevail in this medical malpractice action, plaintiff was required to present evidence to prove that Dr. Steck was grossly negligent or committed willful misconduct. “Gross negligence”
... has been defined as the “want of even slight care and diligence” and the “want of that diligence which even careless men are accustomed to exercise.” Gross negligence has also been termed the “entire absence of care” and the “utter disregard of the of prudence (sic), amounting to complete neglect of the rights of others.” Additionally, gross negligence has been described as an “extreme departure from ordinary care or the want of even scant care.” “There is often no clear distinction between such [willful, wanton, or reckless] conduct and ‘gross’ negligence, and the two have tended to merge and take on the same meaning.” (Citations omitted.)
Rabalais v. Nash, 06-0999 (La.3/9/07), 952 So.2d 653, 658.
In support of the motion for summary judgment, defense counsel presented the opinion of the Medical Review Panel, which unanimously found that there was Uno evidence of gross negligence or willful misconduct, and also Dr. Steck’s affidavit setting forth the operating room protocol during surgical procedures, including the counting of sponges. Dr. Steck’s affidavit clearly states that each hospital has its own operating room protocol and that the nursing staff assisting is responsible for sponge count. Dr. Steck’s affidavit states that “It is not only reasonable but necessary for a surgeon to rely on intraopera-tive sponge count by the operating room staff to confirm that all foreign bodies have been removed from the surgical site, along with visual and manual inspection by the surgeon.” The affidavit explains that the operating staff is responsible for “setting up” the equipment, which includes instrument and sponge count. Furthermore, the staff adds new sponges as necessary and the doctor performing the surgery is not always aware that more sponges have been added to the baseline count. Dr. Steck avers that
Because a surgeon must stay focused on the patient and because the surgeon’s hands are occupied at the surgical site, I, like any surgeon, must rely on the nursing staff to maintain an accurate count of the sponges being utilized during the procedure. It is not realistic to expect a surgeon to keep an accurate count of the number of sponges utilized during a procedure, particularly where the procedure may take several hours and may in fact involve multiple surgeons. After confirming the correct baseline count, the nursing staff, responsible to the hospital, tracks the sponges as they are removed or used by having one person write notes as sponges are added. The surgeon has no such opportunity because he cannot break scrub and must focus her (sic) attention on the patient’s anatomy and medical needs.
*1285 The affidavit also states that the hospital, and not the doctor, is responsible for the hiring and placement of the surgical staff. The affidavit states that the nursing staff reports difficulty in verifying the sponge count, a surgeon can obtain an intra-opera-tive x-ray, which may or may not discover a retained foreign body. Dr. Steck reported that “In this case the nursing staff reported no difficulty with the count |sand confirmed that all sponges were accounted for. Thus, there was no basis on which to request an intra-operative x-ray.”
In opposition to the motion for summary judgment, Ms. Daigle presented a medical report in the form of a letter from Dr. Andrew Larson, who stated that “... leaving a foreign body unintentionally in the patient then closing the operative site then discharging the patient home is indeed a negligent act below the standard of care.” The first hearing on the merits of the motion for summary judgment was conducted on May 16, 2013. During the hearing, the trial court made a comment that the action of leaving a sponge during an operation sounded like gross negligence to him.[2] Nevertheless, the court found the letter insufficient to support the claim, and it granted Ms. Daigle until June 21, 2013 to submit evidence in the form of an affidavit or a deposition, showing that she could support her burden of proving gross negligence at trial.
In response, prior to June 21, 2013, Ms. Daigle submitted the affidavit of Dr. Larson, which merely stated that his prior medical report was true and accurate to the best of his knowledge, information and belief. On September 17, 2013, well after the date ordered by the trial court and one day prior to the next scheduled hearing on the motion for summary judgment, Ms. Daigle submitted a second affidavit from Dr. Larson, dated August 14, 2013 that merely states that “I am of the medical opinion that leaving a sponge in the body of MABEL DAIGLE LEJEUNE at the operation on November 28th, 2005 constitutes the gross negligence of DR. JOHN C. STECK.” No explanation of this statement is provided by Dr. Larson; it is merely attached to his prior report.
18At the hearing, the trial court granted summary judgment, finding that the evidence submitted prior to June 21, 2013 failed to show that Ms. Daigle could sustain her burden of proof at trial. During the hearing, the court specifically stated that it would not consider the affidavit filed after June 21, 2013.
Considering the evidence presented by Ms. Daigle, we find no error in the ruling of the trial court granting summary judgment.
Ms. Daigle also contends that the trial court erred in failing to apply the doctrine of res ipsa loquitur to the facts of this case. In support of this claim, she cites jurisprudence from the Louisiana Supreme Court and Courts of Appeal for the proposition that “Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient’s body, from which a lay person can infer negligence.” Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228, 1233. However, the Pfiffner court went on to say that “Even so, the plaintiff must also demonstrate by a preponderance of the evidence *1286 a causal nexus between the defendant’s fault and the injury alleged.” Id. at 1284. Here, Ms. Daigle had to prove that Dr. Steck was grossly negligent or that his misconduct was willful. The uncontrovert-ed evidence presented in this case fails to present an issue of physician fault through gross negligence of willful misconduct.
For the above discussed reasons, the trial court’s ruling granting summary judgment and dismissing plaintiffs suit against Dr. Steck is affirmed. All costs are assessed against appellants.
AFFIRMED.

. Executive Order 05-33 § 1, 05-47 §§ 4 & 5, and 05-72 §§ 4 & 5.

. In brief, Ms. Daigle suggests that this comment was a ruling of the court, and should have been followed by the trial court in ruling on the motion for summary judgment. However, this remark was not a ruling, nor was it a comment on the strength or adequacy of plaintiffs evidence. The trial judge, in ruling on the motion for summary judgment, was not bound by this comment from a previous judge.