STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 21-764


MATHEW WHITEHEAD, ET AL.

VERSUS

CHRISTUS HEALTH CENTRAL LOUISIANA, ET AL.



**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 270,187
HONORABLE MONIQUE FREEMAN RAULS, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Chief Judge, Billy Howard Ezell, and D. Kent Savoie, Judges.

**Cooks, J., dissents and assigns written reasons.**

**AFFIRMED.**

**Robert Lewis Bussey**
**Bussey & Lauve**
**P. O. Box 8778**
**Alexandria, LA 71306**
**(318) 449-1937**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Acadian Ambulance Service, Inc.**

**David Richard Sobel**
**Mary Katherine Price**
**Faircloth Melton Sobel & Bash, LLC**
**105 Yorktown Drive**
**Alexandria, LA 71303**
**(318) 619-7755**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Marcus R. Brown, M.D.**
    **Sound Physicians Emergency Medicine of Louisiana, Inc.**

**Todd A. Townsley**
**Hannah E. Mayeaux**
**The Townsley Law Firm**
**3102 Enterprise Blvd.**
**Lake Charles, LA 70601**
**(337) 478-1400**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Mathew Whitehead**
    **Mathew Whitehead, as Tutor of Caffrey Lane Whitehead**
    **Courtney Whitehead**

**Brandon A. Sues**
**Sarah Spruill Couvillon**
**Gold, Weems, Bruser, Sues & Rundell**
**P. O. Box 6118**
**Alexandria, LA 71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Christus Health Central Louisiana d/b/a Christus St. Frances Cabrini**
    **Hospital**

**J. Michael Veron**
**Veron, Bice, Palermo & Wilson, LLC**
**721 Kirby Street**
**Lake Charles, LA 70601**
**(337) 310-1600**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Christus Health Central Louisiana d/b/a Christus St. Frances Cabrini**
    **Hospital**

**EZELL, Judge.**

The res nova issue presented by this appeal is whether a medical malpractice claim against a qualified health care provider must still go before a medical review panel in accordance with the Louisiana Medical Malpractice Act when a public health emergency has been declared pursuant to the Louisiana Health Emergency Powers Act. For the following reasons, we find that the claim must still first proceed to a medical review panel.

**FACTS**

According to the pleadings filed in the case, one-year-old Caffrey Whitehead was taken to his pediatrician on March 11, 2020, and diagnosed with an ear infection and upper respiratory infection. Later that day, Caffrey's condition worsened as he experienced vomiting and appeared sicker. His mother, Courtney Whitehead, called his pediatrician and was told to take the child to the emergency room. His parents took him to Christus St. Francis Cabrini Hospital.

Caffrey was initially evaluated by a physician assistant, but his care was soon turned over to Dr. Marcus Brown, a contracted physician employed by Sound Physicians Emergency Medicine of Louisiana, Inc. Caffrey's condition continued to worsen over the next few hours, and the decision was made to transfer him to another hospital for treatment.

Caffrey was transferred by Acadian Ambulance Service to Our Lady of Lourdes Women's and Children's Hospital. Upon his arrival, Caffrey was intubated and was eventually resuscitated. He was transferred to PICU in critical condition with a diagnosis of shock and sepsis. Five days later, on March 17, 2020, Caffrey was weaned from sedative medication and was extubated. Because he was showing signs of a neurological deficit, a CT scan without contrast was performed, which

indicated a probable anoxic brain injury. A subsequent MRI without contrast indicated a global anoxic injury of the white matter only and sparing of the gray matter. Physical, occupational, and speech therapy was initiated, and a G-tube was placed to assist in nutrition.

Caffrey was discharged on April 3, 2020. He was deemed too young for inpatient rehabilitation, so he was enrolled in Early Steps and intensive outpatient physical therapy.

On March 10, 2021, Caffrey's parents, Matthew and Courtney Whitehead, filed a medical malpractice claim with the Division of Administration to convene a medical review panel. On that same day, they also filed a medical malpractice claim in the district court. Named as Defendants were Cabrini Hospital, Dr. Brown, Sound Physicians, and Acadian Ambulance. All four Defendants filed exceptions of prematurity to the district court claim.

A stipulated judgment was entered on June 14, 2021, granting the exception of prematurity filed by Acadian Ambulance and dismissing the claim without prejudice.[1] A hearing on the remaining exceptions of prematurity filed by the other three Defendants was heard on June 14, 2021. The district court granted the exceptions and signed a judgment on June 23, 2021, dismissing the claims against Cabrini Hospital, Dr. Brown, and Sound Physicians without prejudice.

The Whiteheads sought a supervisory writ with this court. On November 8, 2021, this court ruled that the writ application involved an appealable judgment pursuant to La.Code Civ.P. art. 2083. Citing *Douglass v. Alton Ochsner Medical*

---

[1] The Whiteheads acknowledge that Acadian Ambulance is not listed as a covered healthcare provider under Title 29, so that the claims against it must still proceed under the Louisiana Medical Malpractice Act in Title 40.

*Foundation*, 96-2825 (La. 6/13/97), 695 So.2d 953, we noted that appellate courts will not exercise their supervisory jurisdiction when an adequate remedy exists by appeal. We further noted that an appeal would be untimely at this time. However, the filing of the motion seeking a supervisory writ would have been timely filed as a motion seeking an appeal of the judgment, so that the motion should be considered as a timely-filed motion for appeal. *Armstrong v. Stein*, 94-97 (La. 3/18/94), 634 So.2d 845. We converted the writ to an appeal and remanded to the trial court for the Whiteheads to comply with the rules governing an appeal. The appeal is now before this court.

### EXCEPTION OF PREMATURITY

Louisiana Code of Civil Procedure Article 926(A)(1) provides for a dilatory exception of prematurity, which "questions whether the cause of action has matured to the point where it is ripe for judicial determination as an action is premature when it is brought before the right to enforce it has accrued." *Blevins v. Hamilton Med. Ctr., Inc.*, 07-127, p. 4 (La. 6/29/07), 959 So.2d 440, 443. "This exception is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for decision by a medical review panel before filing suit against the provider." *Id*. at 444. In reviewing a trial court's grant of an exception of prematurity, the court of appeal conducts a de novo review. *Hernandez v. Diversified Healthcare-Abbeville, LLC*, 09-546 (La.App. 3 Cir. 11/4/09), 24 So.3d 284, *writ denied*, 09-2629 (La. 2/12/10), 27 So.3d 849.

The Whiteheads contend that their claims are not premature. The Whiteheads argue that they have asserted gross negligence or willful misconduct claims against Cabrini Hospital, Dr. Brown, and Sound Physicians, which are governed by Title 29,

3

making the Medical Malpractice Act no longer applicable, so that the claims do not have to proceed first to a medical review panel.

The burden of proof for a medical malpractice action against a private health care provider is found in La.R.S. 9:2794. On March 11, 2020, Governor John Bel Edwards declared a public health emergency for the entire state due to the Covid-19 global pandemic, invoking the Louisiana Health Emergency Powers Act. La.R.S. 29:760-775. Title 29 provides for a heightened burden of proof against health care providers. With the declaration of a state of public health emergency, La.R.S. 29:771(B)(c)(i) provides that "[d]uring a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct."

Fundamental rules of statutory construction provide that a statute specifically directed to a matter at issue shall prevail over a statute more general in character when the two statutes deal with the same subject matter. *Burge v. State*, 10-2229 (La. 2/11/11), 54 So.3d 1110; *Opelousas Gen. Hosp. Auth. v. Louisiana Health Serv. & Indemn. Co.*, 22-49 (La.App. 3 Cir. 2/14/22), ___ So.3d ___.

As stated in La.R.S. 29:761, the purpose of enacting special policies and procedures during a public emergency is to: (1) protect human life, (2) control the spread of human disease, (3) meet the emergency needs of Louisiana citizens, (4) restore operations essential to the health, safety, and welfare of the people of Louisiana, (5) preserve evidence for law enforcement investigations and prosecutions, and (6) grant local and state officials the authority to provide care, treatment, and vaccination to persons who are ill or have been exposed to contagious diseases and separate affected individuals from the population at large.

4

The obvious purpose of the heightened burden of proof in Title 29 is to allow health care providers to provide medical care and treatment during a time of public health crisis without concerns of liability for a patient's poor outcome, unless the treatment decisions were grossly negligent, or the provider's miconduct was willful.

We agree with the court in *Lejeune v Steck*, 13-1017, p. 6 (La.App. 5 Cir. 5/21/14), 138 So.3d 1280, 1284, *writ denied, sub nom.*, *Daigle v. Steck*, 14-1408 (La. 10/3/14), 149 So.3d 800, that "the burden of proof set forth in La.R.S. 29:771 relative to medical malpractice during a declared state of medical emergency prevails over the more general medical malpractice statutes." The court held that the plaintiff was required to prove that the doctor was grossly negligent or that his misconduct was willful in her claim of medical malpractice which occurred during a state of public health emergency after Hurricane Katrina. Therefore, during a state of public health emergency, the burden of proof against medical providers is heightened.

The Whiteheads do agree that the burden of proof for any claim brought against a health care provider when the Governor has declared a public emergency is a gross negligence or willful misconduct standard. However, they argue that the Medical Malpractice Act is not applicable when claims for gross negligence or willful misconduct are asserted. They are correct, but only as it concerns **state** health care providers and not **private** health care providers.[2] While the State Medical Malpractice Act (La.R.S. 40:1237.1-1240) excludes claims of gross negligence in certain situations against state health care providers and other persons defined

---

[2] Cabrini Hospital, Dr. Brown, and Sound Physicians all submitted proof that they qualify for coverage as a private health care providers under the Louisiana Medical Malpractice Act. La.R.S. 40:1231.2(A).

therein, the Defendants in this case are not covered by the State medical malpractice act. Rather, they are private health care providers.

Provisions for malpractice liability for **state** services are found in La.R.S. 40:1237.1-1240. The medical malpractice act is not applicable to **state** health care providers for either their gross negligence under certain circumstances or their intentional acts. La.R.S. 40:1237.1(A)(9)(a)(iv)(cc); *Bryant v. Dep't of Health and Hosps.*, 18-423 (La.App. 3 Cir. 1/16/19), 264 So.3d 521, *writ denied*, 19-264 (La. 4/8/19), 267 So.3d 614. No such similar provision exists in the provisions of the act relating to malpractice liability for **private** health care services.

The medical malpractice provisions for **private** health care providers are found in La.R.S. 40:1231.1-1231.10. Malpractice by a private health care provider is defined in the Medical Malpractice Act as "any **unintentional** tort or any breach of contract based on health care or professional services rendered[.]" La.R.S. 40:1231.1(A)(13) (emphasis added); *Coleman v. Deno*, 01-1517, 01-1519, 01-1521 (La. 1/25/02), 813 So.2d 303. However, while claims of gross negligence are excluded in certain circumstances under the Medical Malpractice Act for **state** health care providers, claims for gross negligence of **private** health care providers are covered under the Act. *Flood v. Pendleton Mem. Methodist Hosp.*, 02-440 (La.App. 4 Cir. 7/17/02), 823 So.2d 1002, *writ denied*, 02-2206 (La. 11/8/02), 828 So.2d 1121; *Wesco v. Columbia Lakeland Med. Ctr.*, 03-328 (La.App. 4 Cir. 9/10/03), 862 So.2d 997, *writ denied*, 04-525 (La. 4/30/04), 872 So.2d 490.

The Whiteheads argue this court should look to the similar statutory theme as set forth in the Workers' Compensation Act, which is the exclusive remedy against an employer when an employee is injured in the course and scope of employment. It is not the exclusive remedy for an employer who is responsible for an intentional

6

act, in which case the employee is not limited to recovery under the Workers' Compensation Act. La.R.S. 23:1032(B). However, even the Workers' Compensation Act is still the exclusive remedy for gross negligence claims. *Field v. Lafayette Parish Sch. Bd*, 16-495 (La.App. 3 Cir. 11/9/16), 205 So.3d 986, *writ denied*, 16-2141 (La. 1/13/17), 215 So.3d 256.

We find that any claims alleged by the Whiteheads, other than intentional acts, must still first be presented to a medical review panel. This court has held that the definition of an intentional tort as defined by the supreme court in *Bazley v. Tortorich*, 397 So.2d 475 (La.1981), is applicable to medical malpractice actions. *Cudges v. Our Lady of Lourdes Hosp.*, 514 So.2d 195 (La.App. 3 Cir. 1987).

An intentional act in this context has the same meaning as an intentional tort; that is, the person who acts either "(1) consciously desires the physical result of his act[;] or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Bazley*, 397 So.2d at 481.

> The Louisiana Supreme Court has interpreted the intentional act exception narrowly. Substantial certainty "requires more than a reasonable probability that an injury will occur;" specifically, it means an injury is inevitable or incapable of failing. *Reeves v. Structural Pres. Sys.*, 98–1795, p. 9 (La. 3/12/99), 731 So.2d 208, 213 (quoting *Jasmin v. HNV Central Riverfront Corp.*, 94–1497 (La.App. 4 Cir. 8/30/94), 642 So.2d 311, 312).

*Guillory v. City of Lake Charles*, 13-9, p. 3 (La.App. 3 Cir. 5/8/13), 157 So.3d 678, 680.

No one contests that the claims against the Defendants are medical malpractice claims. In reviewing the petition filed by the Whiteheads, we find no allegations against any of the Defendants that they actively desired or knew the results of their actions would result in harm to Caffrey. We find no allegations of

7

an intentional tort. The allegations all sound in negligence. Therefore, the claims against the Defendants must first be presented to a medical review panel.

For the above reasons, we affirm the trial court's grant of Christus St. Francis Cabrini Hospital's, Dr. Marcus Brown's, and Sound Physicians Emergency Medicine of Louisiana, Inc.'s dilatory exceptions of prematurity and dismissal of the Whitehead's claims against them without prejudice. All costs of this appeal are assessed to Matthew and Courtney Whitehead.

**AFFIRMED.**

MATHEW WHITEHEAD, ET AL.

VERSUS

CHRISTUS HEALTH CENTRAL LOUISIANA, ET AL.


**COOKS, Chief Judge, Dissents.**

I respectfully dissent from the majority opinion which affirms the lower court's judgment holding that Plaintiffs' claim must first proceed to a medical review panel.

It is undisputed that Plaintiffs timely filed a Petition for Damages pursuant to the Louisiana Health Emergency Powers Act. The Legislature created this emergency act, which provided:

> During a state or public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property, *except in the event of gross negligence or willful misconduct*." (Emphasis added.)

La.R.S. 29:771(B)(2)(c)(i).

A plain reading of this language shows it specifically excludes acts of gross negligence and willful misconduct from the immunity it provides to health care providers during times of emergency. The Legislature's intention was to have Title 29 provide the sole basis for liability against health care providers during a declared public health emergency, with the grant of immunity to health care providers not extended to acts of gross negligence and willful misconduct. The trial court's decision and the majority opinion get around this by finding that "claims for gross negligence of private health care providers are covered under the [Louisiana Medical Malpractice] Act." For this proposition they cite two fourth circuit cases, *Wesco v. Columbia Lakeland Medical Center*, 00-2232 (La.App. 4 Cir. 11/14/01), 801 So.2d 1187, *writ denied*, 01-3304 (La.3/8/02), 811 So.2d 884, and *Flood v. Pendleton*

*Memorial Methodist Hospital*, 02-440 (La.App. 4 Cir. 7/17/02), 823 So.2d 1002, *writ denied*, 02-2206 (La. 11/8/02), 828 So.2d 1121. The fourth circuit in *Wesco* stated:

> We will first address appellant's argument that, as a matter of public policy and of legislative intent, the MMA should not be held to cover gross negligence. This issue was addressed by this court in *Flood v. Pendleton Memorial Methodist Hospital*, 2002-0440 (La.App. 4 Cir. 7/17/02), 823 So.2d 1002. In *Flood*, we acknowledged that the State Act excludes gross negligence from its coverage under certain circumstances, while the Private Act does not exclude gross negligence. Recognizing the differences between the statutes, we held in *Flood* that the Private Act was constitutional even though it excluded coverage for gross negligence. As in *Flood*, we find no merit in the argument that appellant's gross negligence claim is not covered by the MMA.

I disagree with the fourth circuit's holdings in *Flood* and *Wesco*, which is not mandatory authority in this circuit, and find the language set forth in the case of *Batson v. South Louisiana Medical Center*, 98-38 (La.App. 1 Cir. 12/28/98), 727 So.2d 613, *reversed on other grounds*, 99-232 (La.11/19/99), 750 So.2d 949, correctly sets forth the law in this area:

> Since the Louisiana Legislature and the Louisiana Supreme Court, in *Williams v. State, Department of Health and Hospitals*, 97-0055 (La.12/2/97), 703 So.2d 579, have indicated that there shall be no distinction between the applicability of the private and public malpractice acts, it is apparent that acts of gross negligence should also remove the private health care provider from the sanctuary of the Medical Malpractice Act. A cause of action given one, must also be afforded to the other.

I find the *Batson* case a more accurate reflection of the law. It is clear the enhanced immunity provided to health care providers in times of emergency was not intended to be applicable to acts of gross negligence and willful misconduct. To hold that the medical malpractice act is not applicable to state health care providers for their gross negligence but is applicable to private health care providers runs contrary to the Legislature's intent. To provide greater protection to private health care providers, who can pick and choose their patients, over state health care providers is nonsensical.

Defendants and the majority, quoting *Lejeune v. Steck*, 13-1017, p. 6 (La. App. 5 Cir. 5/21/14), 138 So.3d 1280, 1284, note the specific provisions and "burden of proof set forth in La.R.S. 29:771 relative to medical malpractice during a declared state of medical emergency prevails over the more general medical malpractice statutes." I agree and find the specific provision in R.S. 29:771 removing acts of gross negligence and willful misconduct from the heightened immunity provided to health care providers is controlling herein.

Moreover, the LMMA itself defines "malpractice" as "any unintentional tort." La.R.S. 40:1231.1. By that plain wording, Title 40 only applies to unintentional torts committed by a healthcare provider to a patient. The court in *Heacock v. Cook*, 45,868 (La.App. 2 Cir. 12/29/10), 60 So.3d 624, 628, likewise found the "statutory law leaves no doubt that 'malpractice' under the LMMA does not include intentional torts." As Plaintiffs note in their brief, the law has established that the meaning of the words "gross negligence," "willful" and "intentional" **apply the same**. This court in *Bryant v. Department of Health and Hospitals*, 18-423 (La.App. 3 Cir. 1/16/19), 264 So.3d 521, *writ denied*, 19-264 (La. 4/8/19), 267 So.3d 614, held that "willful--and, by definition, intentional--acts are not covered by the [LMMA]." Explaining that the word "willful" was interchangeable with "intentional", we stated:

> "The word 'willful' has been defined as proceeding from a conscious motion of the will; voluntary; knowingly; deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary. Black's Law Dictionary 1599 (6th ed. 1990)." *Grant v. Natchitoches Manor Nursing Home*, 96-1546, p. 4 (La.App. 3 Cir. 5/14/97), 696 So.2d 73, 76, *writ denied*, 97-1582 (La. 10/17/97), 701 So.2d 1330.

The courts, likewise, have been clear that there is a distinct difference between gross negligence and ordinary negligence. The Louisiana Supreme Court specifically noted in *Ambrose v. New Orleans Police Dep't Ambulance Serv.*, 93-3099, 93-3110, 93-3112, p. 8 (La. 7/5/94), 639 So.2d 216, 219-20, that "gross negligence, therefore,

has a legal meaning distinctly separate, and different, from ordinary negligence."

The Louisiana Supreme Court in *Rabalais v. Nash*, 06-999 (La. 3/9/07), 952 So.2d

653, 658, discussed the meaning of "gross negligence," explaining:

> ... has been defined as the "want of even slight care and diligence" and the "want of that diligence which even careless men are accustomed to exercise." Gross negligence has also been termed the "entire absence of care" and the "utter disregard of the of prudence (sic), amounting to complete neglect of the rights of others." Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." "There is often no clear distinction between such [willful, wanton, or reckless] conduct and 'gross' negligence, and the two have tended to merge and take on the same meaning." (Citations omitted.)

In their petition, Plaintiffs alleged the acts and omissions of the various

healthcare providers named in this case were an extreme departure from ordinary

care where the conduct in question "made it predictable the child would suffer severe

injury." It is alleged Defendants' extreme departure from ordinary care and

deliberate choice not to timely treat baby Caffrey's sepsis and choice not to protect

his airways hours earlier at Cabrini Hospital amounted to a conscious indifference

to consequences and amounted to a willingness that harm should follow. Plaintiffs

sufficiently pled facts from which such levels of culpability could be inferred.

Therefore, under the law it is precluded from the purview of a medical review panel.

The trial court erred in granting the Exception of Prematurity.