KATHLEEN WELCH AND CARROLL
DEWAYNE WELCH

VERSUS

UNITED MEDICAL HEALTHWEST-NEW
ORLEANS, L.L.C. AND UNITED MEDICAL
HEALTHCARE INC.

NO. 24-C-65

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 816-616, DIVISION "L"
HONORABLE DONALD A. ROWAN, JR., JUDGE PRESIDING

June 13, 2024

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Stephen J. Windhorst, and Timothy S. Marcel

**WRIT DENIED**
    **JGG**
    **SJW**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RELATOR,
KATHLEEN WELCH AND CARROLL DEWAYNE WELCH
    David A. Abramson
    Jessica L. Ibert
    Beth E. Abramson

COUNSEL FOR DEFENDANT/RESPONDENT,
STATE OF LOUISIANA, DEPARTMENT OF JUSTICE
    Elizabeth B. Murrill
    Madeline S. Carbonette

COUNSEL FOR DEFENDANT/RESPONDENT,
UNITED MEDICAL HEALTHWEST-NEW ORLEANS, LLC AND UNITED
MEDICAL HEALTHCARE, INC.
    Aldric C. Poirier, Jr.
    A. Rebecca Wilmore

**GRAVOIS, J.**

Plaintiffs/relators, Kathleen Welch and Carroll Dewayne Welch, seek this Court's supervisory review of the denial of their Motion to Declare La. R.S. 29:771(B)(2)(c)(i) Unconstitutional. For the reasons that follow, we deny this writ application.

## FACTS AND PROCEDURAL BACKGROUND

In November 2019, Mrs. Welch was admitted to Tulane Medical Center for treatment of acute pancreatitis and diabetic ketoacidosis. Upon discharge, she was admitted to Bridgepoint Healthcare LA, LLC, d/b/a Bridgepoint Continuing Care Hospital for rehabilitative care. While at Bridgepoint, Mrs. Welch developed pressure ulcers. On April 16, 2020, Mrs. Welch was discharged from Bridgepoint and admitted to United Medical Physical Rehabilitation Hospital, where she continued to suffer with pressure ulcers. Mrs. Welch was discharged from United Medical on May 6, 2020.

On December 24, 2020, plaintiffs filed a request for a medical review panel with the Louisiana Patient's Compensation Fund ("PCF") against Bridgepoint, United Medical, and Mrs. Welch's treating physicians; however, the PCF notified plaintiffs that United Medical was not a qualified healthcare provider. Thereafter, on April 13, 2021, plaintiffs filed a petition for damages, naming as defendants United Medical Healthwest-New Orleans, LLC and United Medical Healthcare, Inc. (hereinafter collectively "United Medical). Plaintiffs alleged that as a result of United Medical's negligence, Mrs. Welch developed large, open pressure wounds to her back and sacrum and suffered significant pain and suffering as a result.

In response, United Medical filed a peremptory exception of no cause of action, asserting plaintiffs do not have a cause of action against United Medical because of immunity provided under the Louisiana Health Emergency Powers Act, La. R.S. 29:771, *et seq*. Specifically, La. R.S. 29:771(B)(2)(c)(i) provides that during a state of a public health emergency, a healthcare provider shall not be civilly liable for causing injury to any person except in the event of gross

24-C-65                    1

negligence or willful misconduct. United Medical argued that plaintiffs failed to state a cause of action since the allegations of negligence occurred during a state of public health emergency pursuant to the COVID-19 pandemic and plaintiffs did not assert a claim for gross negligence or willful misconduct. Plaintiffs opposed the exception and argued, among other things, that La. R.S. 29:771(B)(2)(c)(i) is unconstitutional.

Following a hearing, the trial court granted United Medical's exception of no cause of action, dismissing plaintiffs' petition and the action in its entirety without prejudice. On appeal, this Court found that the trial court did not err in finding that the immunity provided by La. R.S. 29:771(B)(2)(c)(i) applied in this case and United Medical properly proved beyond a preponderance of the evidence that the alleged negligence occurred during a public health emergency, but did not rise to the level of gross negligence. Additionally, this Court found that the constitutionality of La. R.S. 29:771(B)(2)(c)(i) was not before this Court at that time, since the Attorney General had not been notified by certified mail of the proceeding, nor did the trial court issue a ruling on the constitutionality of the statute. Accordingly, this Court affirmed the trial court's final judgment granting United Medical's peremptory exception of no cause of action and dismissing United Medical without prejudice, but remanded the matter to allow plaintiffs the opportunity to properly challenge the constitutionality of La. R.S. 29:771(B)(2)(c)(i), and for the trial court to rule on the constitutionality of La. R.S. 29:771(B)(2)(c)(i). *Welch v. United Med. Healthwest-New Orleans*, *L.L.C*, 21-684 (La. App. 5 Cir. 8/24/22), 348 So.3d 216.

On remand, plaintiffs filed a first supplemental and amending petition, adding as an additional claim that La. R.S. 29:771(B)(2)(c)(i) is unconstitutional. Plaintiffs claimed that La. R.S. 29:771(B)(2)(c)(i) is unconstitutional because it: (1) violates due process and the adequate remedy provision of La. Const. Art. I, § 22; (2) is overbroad since it applies to healthcare providers who may be rendering care unrelated to the public health emergency; and (3) is a prohibited special law. Subsequently, United Medical filed peremptory

exceptions of no cause of action and *res judicata*. Plaintiffs filed a Motion to Declare La. R.S. 29:771(B)(2)(c)(i) Unconstitutional. The Attorney General was properly notified and filed a memorandum in response. United Medical responded as well, claiming that its exceptions should be considered prior to plaintiffs' motion. All three matters came for hearing on November 13, 2023. The trial court considered the Motion to Declare La. R.S. 29:771(B)(2)(c)(i) Unconstitutional first. Following arguments, the trial court denied the motion and pretermitted ruling on the exceptions. A written judgment was signed on November 28, 2023 denying the Motion to Declare La. R.S. 29:771(B)(2)(c)(i) Unconstitutional.

## ANALYSIS

All statutory enactments are presumed constitutional. *Carver v. Louisiana Dep't of Pub. Safety*, 17-1340 (La. 1/30/18), 239 So.3d 226, 230. The burden of establishing unconstitutionality rests upon the party who attacks the statute. *State v. Lee*, 22-01827 (La. 9/1/23), 370 So.3d 408, 412, *reh'g denied*, 22-01827 (La. 10/19/23). The burden plaintiffs carry in challenging the constitutionality of a statute is a heavy burden. It is not enough for a person challenging a statute to show that its constitutionality is fairly debatable; it must be shown clearly and convincingly that it was the constitutional aim to deny the legislature the power to enact the statute. *Carver*, *supra*. The standard of review in determining the constitutionality of a statute, a question of law, is *de novo*. *See State v. Eberhardt*, 13-2306 (La. 7/1/14), 145 So.3d 377, 380.

In 2003, the legislature enacted the Louisiana Health Emergency Powers Act ("LHEPA"), La. R.S. 29:760, *et seq*. The purpose of the LHEPA is to protect the health and safety of the citizens of Louisiana by allowing the state to have "the ability to respond, rapidly and effectively, to potential or actual public health

emergencies." La. R.S. 29:761(A).[1] Included in the LHEPA is La. R.S. 29:771(B)(2)(c)(i), which provides:

> During a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct.

On March 11, 2020, Louisiana Governor John Bel Edwards declared a public health emergency in Louisiana due to the COVID-

---

[1] La. R.S. 29:761 provides:

A. Because the government must do all that is reasonable and necessary to protect the health and safety of its citizens; because new and emerging dangers, including emergent and resurgent infectious diseases and incidents of civilian mass casualties, pose serious and immediate threats; because a renewed focus on the prevention, detection, management, and containment of public health emergencies is essential; and because emergency health threats, including those caused by bioterrorism, may require the exercise of extraordinary government powers and functions, the state must have the ability to respond, rapidly and effectively, to potential or actual public health emergencies. The purposes of this Chapter are:

  (1) To require the development of a comprehensive plan that operates within the framework of the State Emergency Operations Plan and that provides for a coordinated, appropriate response in the event of a public health emergency.

  (2) To suspend administrative policies and procedures to the extent the governor deems necessary within the parameters of the Louisiana Emergency Assistance and Disaster Act of 1993, as amended (R.S. 29:701 et seq.), and in the interest of providing for the following priorities in the context of a public health emergency:

    (a) The protection of human life.

    (b) Controlling the spread of human disease.

    (c) Meeting the immediate emergency needs of the people of Louisiana, specifically medical services, shelter, food, water, and sanitation as outlined in Annex M of the State Emergency Operations Plan.

    (d) Restoring and continuing operations of facilities and services essential to the health, safety, and welfare of the people of Louisiana.

    (e) Preserving evidence for law enforcement investigations and prosecutions.

  (3) To grant state and local officials the authority to provide care, treatment, and vaccination to persons who are ill or who have been exposed to contagious diseases, and to separate affected individuals from the population at large to interrupt disease transmission.

B. It is further declared to be the purpose of this Chapter and the policy of the state of Louisiana that all health emergency powers of the state be coordinated to the maximum extent possible with the comparable functions of the federal government, other states and localities, and private agencies of every type, to the end that the most effective preparation and use may be made of the resources and facilities available for dealing with any public health emergency or bioterrorism event that may occur.

19 pandemic. The public health emergency was extended through March 16, 2022.

Plaintiffs argue that La. R.S. 29:771(B)(2)(c)(i) is unconstitutional since it violates the due process and adequate remedy provisions of La. Const. Art. I, § 2 and La. Const. Art. I, § 22. They contend that this statute deprives a victim of his or her cause of action, a vested property right, without due process. Further, plaintiffs assert that the "blanket immunity" provided for healthcare providers during a public health emergency does not serve a compelling state interest, leads to absurd results, and is not narrowly tailored to serve the objective of protecting citizens during a public health emergency. They contend there is no rational basis for providing immunity to those who are not providing care related to the public health emergency itself. Since Mrs. Welch's care was not COVID-19-related, plaintiffs claim that allowing United Medical to claim immunity under the LHEPA denies them an adequate remedy by due process of law since they are denied their day in court unless they are victims of gross negligence.

La. Const. Art. I, § 22 provides:

> All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.

La. Const. Art. I § 2 guarantees freedom from the deprivation of life, liberty, or property without due process of law. This guarantee is protection from arbitrary and unreasonable action. When the statute in question does not affect fundamental rights, but rather is merely economic or social regulation, it need only have a rational relationship to a legitimate governmental interest. *Med Express Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359, 365. The right of malpractice victims to sue for damages is not a fundamental constitutional right. *Everett v. Goldman*, 359 So.2d 1256 (La. 1978); *Oliver v. Magnolia Clinic*, 11-2132 (La. 3/13/12), 85 So.3d 39.

As stated earlier, the purpose of the LHEPA is to protect the health and safety of the citizens of Louisiana during a public health emergency. During a public health emergency, especially during the COVID-19 pandemic, the need for medical care was great. As a result, the healthcare system was dangerously overburdened, affecting healthcare facilities and healthcare workers throughout the state. The purpose of La. R.S. 29:771(B)(2)(c)(i) is to alleviate the liability burden on healthcare providers during public health emergencies, when such public health emergencies burden the healthcare system. *See Lathon v. Leslie Lakes Ret. Ctr.*, 54,479 (La. App. 2 Cir. 9/21/22), 348 So.3d 888, 892, *writ denied*, 22-01566 (La. 12/20/22), 352 So.3d 80. Plaintiffs allege United Medical provided negligent care to Mrs. Welch from April 16, 2020 until May 6, 2020 (which was during the early hectic and uncertain times of the COVID-19 pandemic), but that care was unrelated to the public health emergency. However, though Mrs. Welch may not have suffered from COVID-19, if the healthcare system during that time period was overburdened, there may still have been connection between her care and the COVID-19 pandemic. Thus, upon review, we find La. R.S. 29:771(B)(2)(c)(i), as applied to this case, is constitutional, as it is rationally related the legitimate state purpose of providing healthcare to the citizens of Louisiana during a public health emergency.

Additionally, in *Crier v. Whitecloud*, 496 So.2d 305 (La. 1986), the Louisiana Supreme Court considered the history of the access to court clause to conclude that in adopting La. Const. Art. I, § 22, the Constitutional Convention did not intend to limit the legislature's ability to restrict causes of action or to bar the legislature from creating various areas of statutory immunity from suit. *Id*. at 309-10. Instead, this clause only ensures that the judicial system will be open to provide remedies that the legislature has fashioned. *Progressive Sec. Ins. Co. v. Foster*, 97-2985 (La. 4/23/98), 711 So.2d 675, 690. Accordingly, plaintiffs' argument that the statute denies them access to the judicial system is without merit.

Plaintiffs also argue that the broad immunity that La. R.S. 29:771(B)(2)(c)(i) allows for leads to absurd and unconscionable

results; they assert that the public health emergency was in effect for two years and divested victims of recourse for their injuries unrelated to the public health emergency.

Previously, in *Welch*, this Court stated:

> We also cannot say that the blanket immunity LHEPA provides to health care providers necessarily leads to an "absurd consequence" in this case, especially considering the profound impact the COVID-19 pandemic had on our state and society. The declared state of emergency Louisiana operated under in 2021 due to COVID-19 caused "economic turmoil, a public health crisis, a substantial burden on the healthcare system, and a significant number of infections and deaths." *Hayes v. Univ. Health Shreveport, LLC*, 21-1601 (La. 1/7/22), 332 So.3d 1163, 1166 n.2.

*Welch*, 348 So.3d at 222.

Accordingly, plaintiffs' arguments in this regard are without merit.

Finally, plaintiffs argue that the statute is an unconstitutionally prohibited special law. Plaintiffs contend the statute is a special law since it creates a "special class of tortfeasors" by providing blanket immunity to every healthcare provider during a public health emergency.

La. Const. Art. III, § 12 provides, in pertinent part:

> (A) Prohibitions. Except as otherwise provided in this constitution, the legislature shall not pass a local or special law:
>
>        * * *
>
> (7) … [G]ranting to any private corporation, association, or individual any special or exclusive right, privilege, or immunity.

A special law is one which operates upon and affects only a fraction of the persons or a portion of the property encompassed by a classification, granting privileges to some persons while denying them to others. A special law is one that confers particular privileges, or imposes peculiar disabilities or burdensome conditions in the exercise of a common right upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law. *Kimball v. Allstate Ins. Co.*, 97-2885 (La.

24-C-65         7

4/14/98), 712 So.2d 46, 53.  A special law is "directed to secure some private advantage or advancement for the benefit of private persons." *Deer Enterprises, LLC v. Par. Council of Washington Par.*, 10-0671 (La. 1/19/11), 56 So.3d 936, 944.

In *Lejeune*, this Court held that La. R.S. 29:771 does not provide for a limited set of health care providers, nor does it limit its application to only those medical personnel rendering direct emergency assistance.  *Lejeune v. Steck*, 13-1017 (La. App. 5 Cir. 5/21/14), 138 So.3d 1280, *writ denied sub nom. Daigle v. Steck*, 14-1408 (La. 10/3/14), 149 So.3d 800.  With La. R.S. 29:771(B)(2)(c)(i) being applicable to all healthcare providers equally, plaintiffs have failed to prove that La. R.S. 29:771(B)(2)(c)(i) is an unconstitutionally prohibited special law.

## CONCLUSION

For the foregoing reasons, we conclude the trial court properly denied the Motion to Declare La. R.S. 29:771(B)(2)(c)(i) Unconstitutional.  This writ application is denied.

**WRIT DENIED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JUNE 13, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_Curtis B. Pursell_
**CURTIS B. PURSELL**
CLERK OF COURT

**24-C-65**

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD A. ROWAN, JR. (DISTRICT JUDGE)
DAVID A. ABRAMSON (RELATOR)        JESSICA L. IBERT (RELATOR)        ELIZABETH B. MURRILL (RESPONDENT)
A. REBECCA WILMORE (RESPONDENT)

### MAILED

ALDRIC C. POIRIER, JR. (RESPONDENT)
ATTORNEY AT LAW
1060 WEST CAUSEWAY APPROACH
MANDEVILLE, LA 70471

BETH E. ABRAMSON (RELATOR)
ATTORNEY AT LAW
601 POYDRAS STREET
SUITE 2615
NEW ORLEANS, LA 70130

MADELINE S. CARBONETTE
(RESPONDENT)
ASSISTANT ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 NORTH THIRD STREET
BATON ROUGE, LA 70802